CHARLES PETERS, III, CHARLES PETERS, JR., and EMILY PETERS, Plaintiffs-Appellees, and STATE OF HAWAII, Plaintiff-Intervenor-Appellant, *v.* WALLACE WEATHERWAX, Individually, and as Guardian Ad Litem for RUTH WEATHERWAX, Minor, and SANDRA WEATHERWAX, Defendants-Appellees

NO. 11275

(CIVIL NO. 68199)

JANUARY 19, 1987

LUM, C.J., NAKAMURA, PADGETT, AND HAYASHI, JJ.,
AND INTERMEDIATE COURT OF APPEALS CHIEF JUDGE BURNS,
IN PLACE OF WAKATSUKI, J., DISQUALIFIED

OPINION OF THE COURT BY NAKAMURA, J.

Whenever the Department of Social Services and Housing (DSSH or the department) of the State of Hawaii furnishes "medical assistance" to one who has been injured under circumstances creating tort liability in another, the department is "subrogated," to

the extent it has provided assistance, to any right or claim for special damages the injured person may have. The question in this appeal is whether a putative tortfeasor may evade the statutory lien established by Hawaii Revised Statutes (HRS) § 346-37 by agreeing with the injured person that their settlement agreement only covers general damages. The Circuit Court of the First Circuit ruled the State "does not have a valid claim" under the circumstances. In our view the State's subrogation right is not subject to defeasance with such ease; and we vacate the ruling.

I.

The controversy at bar stems from an accident where an automobile in which Charles Peters, III was a passenger veered off a public highway and struck a roadside object. Charles was seriously injured in the mishap, and he and his parents applied for public assistance to defray his medical expenses.[1] DSSH found the applicants qualified for assistance and paid the accident victim's medical expenses as they accrued. Thereafter, Charles Peters, III and his parents instituted an action in the circuit court against the driver of the errant vehicle, Ruth Weatherwax, and her parents, averring Ruth's negligent operation of the vehicle caused the harm sustained by the plaintiffs.

Invoking HRS § 346-37[2] and asserting a right to intercede by

---

[1] DSSH is charged by law to "[a]dminister, establish programs and standards, and promulgate rules as deemed necessary for all public assistance, including payments for medical care[.]" HRS § 346-14(1) (1985); see id. § 346-1 (public assistance includes "payments to or on behalf of . . . persons for medical care"). More specifically, when an individual applies for public assistance medical benefits, DSSH must ascertain whether his income and other resources fall below certain pre-determined levels. Id. § 346-29. If the applicant does qualify for such benefits, the department must then pay all of the individual's medical care providers in amounts set annually by the legislature. Id. § 346-59.

[2] HRS § 346-37 sets forth the means through which DSSH may seek to recover sums expended for the medical care of persons qualified for public assistance; in pertinent part it reads:

If the department has provided medical assistance . . . to a person who was injured . . . under circumstances creating a tort or other liability against some third person, the department shall have a right to recover from the third person an amount not to exceed the amount of medical assistance . . . furnished or to be

virtue of Rule 24 of the Hawaii Rules of Civil Procedure (HRCP),[3] the State moved "to intervene in [the] action as a party plaintiff . . . to establish a first lien [to the extent of the medical assistance provided Charles in] the amount of any judgment or settlement in favor of the Plaintiffs[.]" The circuit court, offering no explanation for its ruling, denied the motion. The State promptly moved for reconsideration, arguing a settlement of the suit without the State's presence would "result[] in severe and substantial prejudice to the Department of Social Services and Housing and wholly impair[] the [State's] right to enforce its lien against plaintiffs' recovery." The circuit court, however, did not act on the State's motion for several months. When the court belatedly reversed itself, the State filed an Intervenor's Complaint, praying that "if any judgment or settlement be entered . . . for and on behalf of the Plaintiffs, that the State . . . have judgment against the Defendants for the final and total amount of medical payments furnished or to be furnished in the future to or for Plaintiff Charles Peters, III[.]"

But in the interim between the hearing on the motion for reconsideration and the issuance of the order granting the motion, while the State's right to intercede in the proceedings was in limbo,

---

furnished by the department. The department shall as to this right be subrogated to any right or claim that a claimant . . . has against such third person for special damages to the extent of the amount of medical assistance . . . furnished or to be furnished by the department.

To enforce such rights, *the department may intervene or join in any action or proceeding brought by a claimant against the third person who is liable.* If such action or proceeding is not commenced within six months after the first day on which medical assistance . . . is furnished by the department in connection with the injury . . . involved, the department may institute and prosecute legal proceedings against the third person who is liable for the injury . . . in a state court, either alone (in its own name or in the name of the claimant) or in conjunction with the claimant.

HRS § 346-37(c) (1985) (emphasis added).

[3] HRCP Rule 24 provides:

(a) Intervention of Right. Upon timely application anyone shall be permitted to intervene in an action: (1) *when a statute confers an unconditional right to intervene;* or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

(Emphasis added).

what it feared had come to pass. The parties to the suit reached a settlement and executed a Release and Indemnity Agreement whereby the defendants were released, without an admission of liability, "from and on account of any and all claims" arising out of the automobile accident, in consideration of the payment to the plaintiffs of $255,000, said sum "represent[ing] GENERAL DAMAGES only." The plaintiffs then filed a document purporting to dismiss their suit with prejudice.

The State continued to press for the recovery of public funds expended on behalf of Charles Peters, III. Though the State's motion for reconsideration had been decided by the circuit court, the plaintiffs sought an administrative resolution of the State's claim, requesting a hearing before a DSSH hearings officer pursuant to HRS § 346-37(g)[4] to determine the State's lien rights, if any. The hearings officer concluded that since HRS § 346-37(c) "limits [DSSH] liens to monies received for special damages" and "the settlement monies are determined to be for general damages[ only, t]here are no special damages for the DSSH lien to attach to and no recovery can be made."[5] Although DSSH, she went on to say, "did have a statutory right to intervene in this case prior to the settlement they chose not to and must now accept the consequences."[6]

---

[4] HRS § 346-37(g) (1985) reads:

In the event that there is a dispute between the claimant, the claimant's agent, or the claimant's attorney, and the department concerning the existence of the lien or the amount of the lien, the claimant, the claimant's agent, or the claimant's attorney may request in writing a hearing on the dispute. After receipt by the department of such a written request, the department shall conduct an administrative hearing within a reasonable period of time. The provisions of chapter 91 shall apply to such a hearing. Funds sufficient to extinguish the lien rights of the department shall be either retained by the person or entity served with the notice of lien, or shall be paid to the department pending its decision.

[5] The hearings officer also decided that an Assignment of Payment form signed by Charles Peters, III, assigning to DSSH certain monies received for medical expenses, was ineffective because there was no statutory basis for such a procedure, and Peters was mentally incompetent when he signed the form.

[6] The State, of course, sought intervention before the settlement was reached, but had been rebuffed by the circuit court and was seeking a reexamination of the court's decision when the hearings officer issued her decision.

Relying on the purported dismissal of the suit by the plaintiffs and the ruling of the hearings officer, the defendants then moved for dismissal of the intervenor's complaint. The circuit court, however, denied the motion and ordered the defendants to respond to the complaint. After the submission of a responsive pleading, the State sought a partial summary judgment, praying for an order adjudging that it had "a claim for special damages against Defendants." The court denied the motion, holding instead that the State had none. The ruling effectively disposed of the only outstanding claim in the case, and the intervenor perfected a timely appeal to this court.

## II.

Since the task at hand calls for an interpretation and application of a statutory provision, we begin our analysis there, mindful as ever that our "primary duty . . . in interpreting statutes is to ascertain and give effect to the intention of the legislature[.]" *Stop H-3 Association v. Department of Transportation*, 68 Haw. \_\_\_\_, \_\_\_\_, 706 P.2d 446, 451 (1985).

## A.

The statute in question, HRS § 346-37, declares that "[i]f the department has provided medical assistance . . . to [someone] who was injured . . . under circumstances creating a tort . . . liability against [a] third person, [it] shall have a right to recover from the third person an amount not to exceed [such] assistance . . . ." *See supra* note 2. The statute further states "[t]he department shall as to this right be subrogated to any right or claim that a claimant . . . has against [the] third person for special damages to the extent of the amount of medical assistance . . . furnished or to be furnished by the department." *Id.*

Reading the language of HRS § 346-37 throughout, we are led ineluctably to a conclusion that the key to our search for meaning lies in "subrogated," a word employed without definition, either in the section or elsewhere in the relevant chapter of Hawaii Revised Statutes. But since it is an oft-used legal term whose antecedents

are traceable to the common law,[7] we turn thereto for guidance. "For in the absence of anything to the contrary it is fair to assume that [the legislature] used ["subrogated"] in the statute in its common-law sense." *Gilbert v. United States,* 370 U.S. 650, 655 (1962). Or as put by the author of a highly regarded treatise, "[t]he interpretation of well-defined words and phrases in the common law carries over to statutes dealing with the same or similar subject matter." 2A *Sutherland on Statutory Construction* § 50.03, at 435 (4th ed. C. Sands ed. 1984) (footnote omitted). Moreover, "common-law meanings are assumed to apply even in statutes dealing with new and different subject matter, to the extent that they appear fitting and in the absence of evidence to indicate contrary meaning." *Id.* (footnote omitted).

### B.

Subrogation is a venerable creature of equity jurisprudence, "so administered as to secure real and essential justice without regard to form[.]" H. Sheldon, *The Law of Subrogation* § 1, at 2 (1882) (footnote omitted). "It is broad enough to include every instance in which one party pays a debt for which another is primarily answerable, and which, in equity and good conscience, should have been discharged by the latter[.]" *Id.* (footnote omitted). It "is defined by Sheldon to be 'the substitution of another person in the place of a creditor, so that the person in whose favor it is exercised succeeds to the rights of the creditor in relation to the debt.' " *Kapena v. Kaleleonalani,* 6 Haw. 579, 583 (1885). When subrogation occurs, "[t]he substitute is put in all respects in the place of the party to whose rights he is subrogated." *Id.* In effect, he "steps into the shoes" of the party. *See Putnam v. Commissioner,* 352 U.S. 82, 85 (1956); A. Windt, *Insurance Claims and Disputes* § 10.05, at 409 (1982); *Black's Law Dictionary* 1279 (5th ed. 1979).

---

[7] When we speak of the "common law," we are, of course, using the term in a broad sense and referring to the non-statutory component of our laws, which has been described as "the general system of common law and equity." *The Church of Jesus Christ of Latter-Day Saints v. United States,* 136 U.S. 1, 62 (1890); *see also In re Dole,* 14 Haw. 554, 561 (1903) ("[E]quity is included in the common law . . . ."); 15A Am. Jur. 2d *Common Law* § 9 (1976) (footnote omitted) ("The principles of equity are deemed to be a part of the common law adopted in this country.").

That the legislature contemplated the State would "step into the shoes" of one on whose behalf it pays medical expenses cannot be doubted. For the statute expressly permits DSSH to "intervene or join in any action or proceeding brought by [the injured party] against the third person who is liable." HRS § 346-37(c). And "[i]f such action or proceeding is not commenced within six months after the first day on which medical assistance . . . is furnished . . . , the department may institute and prosecute legal proceedings against the third person . . . , in a state court, either alone (in its own name or in the name of the claimant) or in conjunction with the [injured party]." *Id.*

### III.

Despite this unmistakable legislative intent to establish a statutory right to recovery when DSSH defrays the medical expenses of an accident victim who seeks public assistance, the circuit court decided the State had no claim for special damages. The defendants urge an affirmance of the decision on grounds that Charles Peters, III "waived his right to claim special damages" and DSSH was denied "reimbursement for medical expenses" in the administrative hearing conducted at the plaintiffs' request. But we would not be performing our duty to ascertain and give effect to the intention of the legislature if we permitted the modicum of ingenuity displayed here to set legislative purpose to naught.

### A.

Upon application for assistance made by Charles Peters, III and his parents, DSSH paid approximately $15,000 in public funds to various health care providers. In doing so, it "stepped into the shoes" of the accident victim and acquired a right to assert a claim against the person responsible for the accident to recover what it paid. Though Charles Peters, III may have "waived his right to claim special damages" by agreeing to dismiss his action against the defendants in exchange for the payment of $255,000 in general damages, the right to recover medical expenses was not his to waive

— the State had been substituted by statute in place of himself and his parents as far as that right is concerned. Furthermore, "[a]lthough, as between debtor and creditor, the debt may be extinguished, yet, as between the person who has paid the debt and the other parties, the debt is kept alive [by the doctrine of subrogation], so far as may be necessary to preserve the securities." H. Sheldon, *supra,* § 11, at 10 (footnote omitted).

When "the legislature enacts into statute law a common law concept, . . . that is a clue that the courts are to interpret [and apply] the statute with the freedom with which they would construe and apply a common law principle[.]" Posner, *Statutory Interpretation – in the Classroom and in the Courtroom,* 50 U. Chi. L. Rev. 800, 818 (1983). Under the concept borrowed from the common law here, a court "may give restitution . . . and prevent the unjust enrichment of the defendant, where the plaintiff's property has been used in discharging an obligation owed by the defendant[.]" *Restatement of Restitution* § 162 comment a (1937).[8] Unjust enrichment in this instance could only be prevented if the State is allowed to assert its claim for special damages. Otherwise, the defendants may have discharged their tort liability for less than what was just in the circumstances at the expense of the State; and it would then be unjust for them to retain the benefit of the State's assumption of the obligation to pay the accident victim's medical bills.

### B.

Turning finally to the alternative ground for affirmance urged by the defendants, we note the plaintiffs invoked HRS § 346-37(g) in seeking an administrative hearing. The subsection allows an accident victim whose medical expenses have been paid by DSSH to request a hearing if "there is a dispute between the claimant, the claimant's agent, or the claimant's attorney, and the department

---

[8] Section 162 of the *Restatement* itself reads:

Where property of one person is used in discharging an obligation owed by another or a lien upon the property of another, under such circumstances that the other would be unjustly enriched by the retention of the benefit thus conferred, the former is entitled to be subrogated to the position of the obligee or lien-holder.

concerning the existence of a lien or the amount of the lien." *See supra* note 4. What was heard administratively at the request of the plaintiffs was the dispute between themselves and the State regarding the possible existence of a lien on the stipulated sum designated by the parties to the settlement as "general damages." The subrogated claim for special damages and its validity and amount are matters for the circuit court, not the hearings officer, to pass on.

The circuit court thus erred in ruling the State had no claim for special damages. We therefore vacate the order denying the State's motion for partial summary judgment and remand the case for further proceedings not inconsistent with this opinion.

*Steven K. Chang,* Deputy Attorney General, for plaintiff-intervenor-appellant.

*Richard Waid (David L. Turk* and *Susan L. Gochros* on the brief; *Turk & Agena,* of counsel) for defendants-appellees.