768 P.2d 226 (1989)
GRAIN DEALERS MUTUAL INSURANCE COMPANY, a foreign corporation, Plaintiff-Appellant,
v.
PACIFIC INSURANCE COMPANY, LIMITED, a Hawaii corporation, and Brian Knapp, Defendants-Appellees.
No. 12675.
Supreme Court of Hawaii.
January 18, 1989.
*227 Edward K. Placek, Jr., Honolulu, for plaintiff-appellant.
Colleen K. Hirai and Diane W. Wong, of Libkuman, Ventura, Ayabe, Chong & Nishimoto, Honolulu, for defendants-appellees.
Before LUM, C.J., and NAKAMURA, PADGETT, HAYASHI and WAKATSUKI, JJ.
WAKATSUKI, Justice.

I.
Brian Knapp was injured when the car he was driving collided with a car driven by Iwao Sato but owned by Maui Island Tours, Ltd. Grain Dealers Mutual Insurance Company, having insured the vehicle driven by Knapp, paid no-fault insurance benefits amounting to more than $11,000 for Knapp's injuries. Sato and Maui Island Tours (tortfeasors) were insured by Pacific Insurance Company, Ltd.
About a year after the accident, Knapp settled his claim against tortfeasors for personal injuries arising from the accident. Pursuant to the settlement agreement, Pacific Insurance paid Knapp $20,000. In return, Knapp released and indemnified tortfeasors from any further claims arising from the accident.
Prior to the date of settlement, Grain Dealers informed Pacific Insurance that it paid no-fault benefits to Knapp, and therefore, it claimed subrogation rights to fifty percent of the benefits paid to Knapp. At the time of settlement negotiations between Knapp and Pacific Insurance, Grain Dealers was not notified nor aware of the negotiations. Knapp cannot be found and thus, Grain Dealers looks to Pacific Insurance to recover a portion of the no-fault benefits paid to Knapp.
Under Hawaii Revised Statutes (HRS) § 294-7 (1985),[1] a no-fault insurer can recoup up to fifty percent of the no-fault benefits paid when the insured effects a tort recovery by suit or settlement. Pursuant to this statute, Grain Dealers in 1978 brought an action against Pacific Insurance and Knapp for fifty percent of the no-fault benefits paid to Knapp. The complaint also sought punitive damages against Pacific Insurance.
After filing an answer to the complaint and a cross-claim against Knapp, Pacific Insurance moved to dismiss Grain Dealers' complaint. The dismissal was granted in 1979, and Grain Dealers appealed therefrom. This court in a Memorandum Opinion (S.C. No. 7438, issued 4/29/82) determined that there was no appellate jurisdiction because all claims had not been disposed of. The trial court subsequently certified the dismissal of Grain Dealers' action against Pacific Insurance as being final pursuant to Rule 54(b), Hawaii Rules of Civil Procedure.

II.
On appeal, although the trial court appears to have relied on the release and indemnity provision of the settlement agreement signed by Knapp in dismissing Grain Dealers' complaint, Pacific Insurance urges affirmance by contending that under HRS § 294-7 (1985) Grain Dealers can seek recovery only from Knapp, its own insured, and not from the tortfeasors.

A.
Pacific Insurance's position is supported by dicta in the opinion of our Intermediate Court of Appeals (ICA) in First Insurance Company of Hawaii v. Jackson, 5 Haw. App. 98, 678 P.2d 1095 (1984). The ICA declared that "even with its HRS § 294-7 subrogation right, the insurer has no right to pursue the tortfeasor for any portion of *228 the no-fault benefits paid." Id. at 103-04, 678 P.2d at 1100. In Jackson, however, the no-fault insurer had brought suit against its insured and not the tortfeasor, and therefore, the suit was clearly permissible. See, e.g., HRS § 294-30(b) (1985).[2]
This court, in reviewing Jackson on writ of certiorari, determined that the dicta stated by the ICA was not applicable to the facts in Jackson, and therefore, did not address the issue presented in this case. See First Insurance Company of Hawaii v. Jackson, 67 Haw. 165, 681 P.2d 569 (1984).
We now disagree with the dicta in the ICA's Jackson opinion which holds that a no-fault insurer has no right to pursue the tortfeasor for any portion of the no-fault benefits paid.

B.
The ICA, in Jackson, relied on the language of legislative committee reports concerning an amendment to § 294-7. Quoting from committee reports emanating from both houses of the legislature, the ICA stated that the "insurer's right of subrogation arises only where a no-fault claimant has recovered in tort for the same items of damages previously paid by the no-fault insurer." 5 Haw. App. at 103, 678 P.2d at 1100. The emphasis on the underscored language was added by the ICA.
We disagree with the ICA's reading of the committee reports. In amending the statute, the concern expressed by the legislature was that the insurer recover only duplicative payments. Committees in both houses reported:
Under present practices of many no-fault insurers, subrogation is applied to claimant's tort recovery regardless of whether or not the claimant has been fully compensated therefor. This practice is contrary to the original intent of the legislature to provide fair and equitable compensation for the injured party. Your Committee finds that this bill would allow subrogation only where the same items of damages are recovered once from the no-fault insurer and again from the tortfeasor.
Sen.Stand.Comm.Rep. No. 456, reprinted in 1978 Senate Journal at 959; Hse.Stand. Comm.Rep. No. 831, reprinted in 1978 House Journal at 1784.
There is nothing in the committee reports to indicate any intent by the legislature to limit the no-fault insurer's subrogation action against only the insured and not against the tortfeasor or the tortfeasor's insurer.

C.
In Jackson, the ICA recognized that what was before it was not the classical subrogation action but rather an action for reimbursement. This court agreed,[3] but that recognition does not compel the conclusion that the classical subrogation action against the tortfeasor or his insurer is precluded.
The term "subrogation" is not defined in our statutes. However, we recently stated that
[w]hen the legislature enacts into statute a common law concept, ... that is a clue that the courts are to interpret and apply the statute with the freedom with which they would construe and apply a common law principle.
Peters v. Weatherwax, 69 Haw. ___, 731 P.2d 157, 162 (1987) (citations and internal *229 quotation marks omitted). See also, United States v. Greene, 266 F. Supp. 976, 979 (N.D.Ill.E.D. 1967) ("`Subrogation' is a term of legal art which we assume would not be employed by the drafters of the statute unless they intended it to be construed in its normal sense.").
Neither legislative history nor the scheme of the no-fault statute suggests that the legislature, in using the term "subrogation" in § 294-7, did not intend to encompass the common law concept of subrogation wherein the party who paid the debt pursues its subrogated claims against the tortfeasor/debtor.
We hold, therefore, that Grain Dealers is not precluded from pursuing the tortfeasors or their insurer for the portion of the no-fault benefits paid which the law permits it to recover.

III.
Although the statute permits Grain Dealers' action against the tortfeasors, is Grain Dealers' claim nonetheless foreclosed by the settlement agreement entered into between Knapp and the tortfeasors' insurer?
The laws and principles announced by this court in Peters v. Weatherwax, 69 Haw. ___, 731 P.2d 157 (1987), are applicable here.
In Peters v. Weatherwax, Peters was injured in an auto accident. The State provided medical assistance to Peters. Pursuant to HRS § 346-37(c), the State was subrogated to any rights or claims that Peters had against the tortfeasor for special damages. By settlement agreement with the tortfeasor, Peters waived his right to claim special damages in exchange for payment of $255,000 in general damages. This court held that the right to recover medical expenses was not Peters' right to waive because the State had been substituted in his place as far as that right was concerned. As between Peters and the tortfeasor, the debt may have been extinguished; but as between the State which paid the debt and the tortfeasor, the doctrine of subrogation kept the debt alive "so far as ... necessary to preserve the securities." Peters, 69 Haw. at ___, 731 P.2d at 162.
In Peters, the State's subrogation rights were derived from HRS § 346-37(c). Grain Dealers' subrogation rights are derived from HRS § 294-7. The language of these statutes may be dissimilar,[4] but the principles involved are the same. In Peters, this court stated:
Under the concept borrowed from the common law here, a court "may give restitution ... and prevent the unjust enrichment of the defendant, where the plaintiff's property has been used in discharging an obligation owed by the defendant[.]" Restatement of Restitution § 162 comment a (1937). [Footnote omitted.] Unjust enrichment in this instance could only be prevented if the State is allowed to assert its claim for special damages.
Otherwise, the defendants may have discharged their tort liability for less than what was just in the circumstances at the expense of the State; and it would then be unjust for them to retain the benefit of the State's assumption of the obligation to pay the accident victim's medical bills.
Peters v. Weatherwax, 69 Haw. at ___, 731 P.2d at 162. The policy underlying the Peters decision is equally applicable in this case.
We hold that Grain Dealers is subrogated to any rights or claims which Knapp has against the tortfeasors for fifty percent of the no-fault benefits paid to Knapp, and as *230 to these rights, Knapp was without authority to effectuate a waiver. Therefore, Knapp's release could not have extinguished the debt as between Grain Dealers and the tortfeasors.

IV.
This right of subrogation, however, is not absolute. Subrogation is a creature of equity. Peters v. Weatherwax, 69 Haw. at ___, 731 P.2d at 161; Kapena v. Kaleleonalani, 6 Haw. 579, 583 (1885). Equitable principles dictate that the subrogee exercise reasonable diligence to protect its subrogation interest. Consolidation Coal Co., Inc. v. Liberty Mutual Ins. Co., 406 F. Supp. 1292, 1301 (W.D.Pa. 1976); Travelers Insurance Co. v. Hartford Accident & Indemnity Co., 222 Pa. Super. 546, 550, 294 A.2d 913, 915 (1972); Baker v. Fargo Building & Loan Ass'n., 64 N.D. 317, 252 N.W. 42 (1934).
In a case falling within the ambit of HRS § 294-7, we hold that "reasonable diligence" requires at least that the no-fault insurer which claims subrogation rights give timely and reasonable notice of its claim to the tortfeasor and the tortfeasor's insurer. In the instant case, the record clearly indicates that Grain Dealers gave timely and reasonable notice to Pacific Insurance of its subrogation claim for fifty percent of no-fault benefits paid to Knapp.

V.
We hold that the trial court erred in dismissing Grain Dealers' action against Pacific Insurance.
The dismissal is vacated and the case is remanded for further proceedings not inconsistent with this opinion.
NOTES
[1] HRS § 294-7 (1985) provides:

Rights of subrogation. Whenever any person effects a tort liability recovery for accidental harm, whether by suit or settlement, which duplicates no-fault benefits already paid under the provisions of this chapter, the no-fault insurer shall be subrogated to fifty per cent of the no-fault benefits, up to the maximum limit specified by section 294-3(c), paid to such person.
[2] HRS § 294-30(b) (1985) states:

A person who has effected a tort recovery, whether by suit or settlement, and who is sued by the insurer to recover fifty per cent of the no-fault benefits paid, may be allowed reasonable attorney's fees and reasonable costs of suit.
[3] We stated:

Although the statutory section says that the insurer is "subrogated" in this case, its claim to recovery of one-half of the no-fault benefits paid is not a subrogation action in the classical sense since the suit is against the insured, who stands in the position of the subrogor creditor, and not against the other driver and his insurance company, who stand in the position of debtor. (Emphasis added.)
First Insurance Company of Hawaii v. Jackson, 67 Haw. 165, 167, 681 P.2d 569, 571 (1984) (citations omitted).
[4] HRS § 346-37(c) reads, in pertinent part:

If the department has provided medical assistance . .. to a person who was injured ... under circumstances creating a tort ... liability against some third person, the department shall have the right to recover from the third person an amount not to exceed the amount of medical assistance ... furnished ... by the department. The department shall as to this right be subrogated to any right or claim that a claimant ... has against such third person for special damages to the extent of the amount of medical assistance ... furnished ... by the department.
Compare HRS § 294-7, supra, at n. 1.