71 P.3d 417

**Gerry NACINO, Petitioner/Appellant–Appellee,**

v.

**Lillian KOLLER,[1] Director, Department of Human Services, State of Hawai'i, Respondent/Appellee–Appellant.**

**No. 23572.**

Supreme Court of Hawai'i.

June 30, 2003.

As Corrected July 7, 2003.

has been substituted for Susan M. Chandler, the Director at the time this case was decided by the first circuit court.

Howard Glickstein, Honolulu, for petitioner/appellant-appellee, on the writ.

LEVINSON and ACOBA, JJ., and Circuit Judge SIMMS, Assigned by Reason of Vacancy; and MOON, C.J., Dissenting, with whom NAKAYAMA, J., Joins.

Opinion of the Court by ACOBA, J.

## I.

On October 21, 2002, this court granted the petition of Petitioner/Appellant Appellee Gerry Nacino (Petitioner) for a writ of certiorari to review the decision by the Intermediate Court of Appeals [2] (ICA) in *Nacino v. Chandler,* 101 Hawai‘i 473, 71 P.3d 424, 2002 WL 31019351 (Haw.Ct.App. Sept. 11, 2002) (ICA opinion). Therein, the ICA partially reversed the final judgment of the first circuit court [3] that reduced the medical lien amount of the Department of Human Service (DHS or State) on Petitioner's tort recovery and held that DHS is entitled to recover the full amount of its lien for medical assistance payments made on Petitioner's behalf. We set forth our decision in order to clarify the law regarding Hawai‘i Revised Statutes (HRS) § 346–37, the statute involved. *See State v. Hanson,* 97 Hawai‘i 71, 73, 34 P.3d 1, 3 (2001) (affirming ICA opinion, but granting certiorari "[i]n light of Defendant's objections, ... to clarify the basis for upholding airport security searches"); *Korsak v. Hawai‘i Permanente Med. Group,* 94 Hawai‘i 297, 300, 12 P.3d 1238, 1241 (2000) (granting certiorari "to clarify several aspects of the ICA opinion").

## II.

The facts are relatively undisputed. On March 15, 1996, Petitioner, while a passenger on a Honda moped, collided into a pick-up truck owned by the City and County of Honolulu (the City). Petitioner suffered severe permanent orthopedic injuries and serious brain damage.

On Petitioner's behalf, a guardian ad li-

---

2. Associate Judge Corinne K.A. Watanabe authored the opinion and was joined by Chief Judge James S. Burns and Associate Judge Daniel R. Foley.

3. The Honorable Allene R. Suemori presided.

tem[4] applied for assistance from DHS. Petitioner's application for DHS assistance included an assignment of rights,[5] as required under HRS § 346–37(c) (Supp.1997).[6] DHS paid for all of Petitioner's medical care and treatment arising out of the damages from the accident. The medical lien applied by the State for expenses arising out of this medical care totaled $141,422.19.

A lawsuit was filed on Petitioner's behalf against the City and the driver of the moped, Troy Sunio.[7] The State of Hawai'i chose not to participate in the suit, even though it had a right to intervene pursuant to HRS § 346–37(c). It did transmit letters informing all the parties that the State held an assignment of rights in any recovery and it would seek reimbursement if any recovery was made.

Prior to trial, Petitioner's counsel hired many experts and apparently expended a substantial amount of money in discovery attempts. According to Petitioner, "[t]here [were] significant weaknesses in [Petitioner's] case against the City." ICA opinion at 4; *see also* Petition at 2 ("liability was weak or non-existent"). The only witnesses to the accident were the driver and the passenger in the City pick-up truck, who both maintained that the moped was on the wrong side of the road and was speeding. Petitioner was unable to fully rebut these claims as his memory of the incident was limited, due to his injuries, and the driver of the moped had disappeared.

On March 6, 12 & 24, 1998, Petitioner's counsel sent letters to the Attorney General's office attempting to negotiate a waiver or a reduction of the amount of DHS's lien. The thrust of these letters was that reduction "might well make the difference between my client's agreement to settlement at the figure suggested by the City, or his decision to 'roll the dice' and go to trial, even though our chances of doing as well or better than the City's offer are slim." On March 25, 1998, Deputy Attorney General Michael S. Vincent drafted a letter in response and stated that federal regulations prevented the State from reducing or waiving a lien.

Thereafter, Petitioner accepted a $600,000.00 settlement offer from the City and placed the lien amount of $141,422.19 into an interest-bearing account. On June 25, 1998, Petitioner requested an administrative hearing, pursuant to HRS § 346–37(g)

---

4. At some point the guardian ad litem order was set aside as Petitioner made a partial recovery and was capable of making decisions on his own behalf.

5. The assignment of rights agreement provided, in part, that:

ASSIGNMENT OF RIGHTS: I understand that as a condition of eligibility for financial assistance, I am assigning to the State of Hawai'i any rights to child support that I may have from another person, for myself or any person for whom I am applying or receiving assistance. This assignment includes rights to support from previous as well as present and future support. Such payments will be used to reimburse the State up to the amount of assistance granted. As a condition of eligibility for financial assistance I understand that by applying, I am assigning to the State of Hawai'i my rights to any third party payments for medical care. I will cooperate in obtaining third party payments.

6. HRS § 346–37(c) states:

If the department has provided medical assistance or burial payment to a person who was injured, suffered a disease, or died under circumstances creating a tort or other liability against a third person, *the department shall*

have a right to recover from the third person an amount not to exceed the costs of medical assistance or burial payment furnished or to be furnished by the department. The department shall as to this right be subrogated to any right or claim that a claimant, defined in subsection (k), has against the third person for special damages to the extent of the costs of medical assistance or burial payment furnished or to be furnished by the department.

*To enforce its rights, the department may intervene or join in any action or proceeding brought by a claimant against the third person who is liable.* If the action or proceeding is not commenced within six months after the first day on which medical assistance or burial payment is furnished by the department in connection with the injury, disease, or death involved, the department may institute and prosecute legal proceedings against the third person who is liable for the injury, disease, or death, in a state court, either alone (in its own name or in the name of a claimant) or in conjunction with the claimant.

(Emphases added.)

7. According to Petitioner, Mr. Sunio failed to respond to all notices regarding the litigation. Thereafter, all litigation and settlement efforts were directed towards the City.

(1993),[8] to resolve the dispute over the amount owed to the State. The administrative hearings officer eventually ruled that he lacked "equity jurisdiction" to reduce the amount owed to DHS and awarded the full amount of the lien to the State.

The facts show that the State established a Medicaid lien pursuant to [HRS § ] 346–37 in the amount of $141,422.19 for medical assistance provided [Petitioner] for his injuries suffered in the March 15, 1996 accident which he received $600,000.00 from the [City] to settle a personal injury law suit. DHS rules and statutes do not require that the State discount its Medicaid lien the same percent that [Petitioner] discounted the value of his personal injury lawsuit and settled for which was significantly less than his actual damages because of liability problems. *Even if it would be fair and equitable for DHS to discount its Medicaid lien, a DHS hearing officer does not have equity jurisdiction to make such a determination.*

(Emphasis added.)

On August 31, 1999, Petitioner filed a notice of appeal to the court. After hearing oral arguments, on February 7, 2000, the court ordered the case remanded to the DHS hearings officer

so that an evidentiary hearing can take place and findings of fact drafted on whether or not special damages were awarded. If special damages were awarded, [DHS] would still have a right of reimbursement from [the City] under the doctrine of subrogation.

On February 16, 2000, Petitioner and DHS filed a joint motion for reconsideration of the February 7, 2000 order, in which they stated that remand was not necessary, it was undisputed that no portion of the $600,000.00 was denominated special damages, and the court should decide the amount payable to the State:

[The settlement] provides that the case settled for 600 thousand dollars; and that there was no portion of the 600 thousand dollars that was denominated special damages. *While no portion of the settlement has been identified as special damages, there is no dispute that the DHS lien is to be satisfied from the settlement proceeds.* Rather the dispute is as to the amount DHS should be reimbursed or is otherwise entitled.

*Both parties agree that this court can and should decide now, without remand, the substantive issues briefed and argued by the parties, the bottom line of which is whether the State is entitled to receive any portion of the settlement, and if so, how much.*

(Emphases added.)

On April 14, 2000, the court granted the motion for reconsideration and held that the total damages suffered was four million dollars, of which the settlement constituted fifteen percent of the total damages. The court then ordered that the State should recover only fifteen percent of its lien, or $21,213.33.

On appeal, the ICA held that the court erred when it reduced DHS's lien. *See* ICA opinion, 101 Hawai'i at 486, 71 P.3d at 437. Thus, the ICA vacated that portion of the court's July 7, 2000 final judgment that concluded that DHS shall be reimbursed a reduced amount and remanded the case for entry of an amended final judgment for the entire amount of the lien.

## III.

The issues raised by Petitioner in his application for a writ of certiorari are not substantially different from those which he

8. HRS § 346–37(g) states as follows:

In the event that there is a dispute between the claimant, the claimant's agent, or the claimant's attorney, and the department concerning the existence of the lien or the amount of the lien, the claimant, the claimant's agent, or the claimant's attorney may request in writing a hearing on the dispute. After receipt by the department of such a written request, the department shall conduct an administrative hearing within a reasonable period of time. The provisions of chapter 91 shall apply to such a hearing. Funds sufficient to extinguish the lien rights of the department shall be either retained by the person or entity served with the notice of lien, or shall be paid to the department pending its decision.

raised before the ICA. Petitioner argues that the ICA erred in holding that DHS has a priority in payment, *i.e.,* that DHS may be reimbursed completely to the extent of its medical lien before Petitioner may be compensated for his damages. In addition, he contends that the assignment of rights to DHS was an adhesionary contract, and thus invalid.

### IV.

HRS § 346–37(e) (Supp.1997) provides that DHS "shall have a lien in the amount of the costs of medical assistance ... against the proceeds from *special damages* or burial payment made against the proceeds from *special damages awarded in a* suit or *settlement.*" (Emphases added.) In addition, the assignment of rights provides that Petitioner assigns his "rights to any third party payments for *medical care.*" (Emphasis added.) Accordingly, it was seemingly necessary to establish the amount of "special damages" and the payments made by the State for "medical care."

Relying upon this court's decision in *Peters v. Weatherwax,* 69 Haw. 21, 731 P.2d 157 (1987), the ICA concluded that it was unnecessary to determine the amount of special damages. In *Peters,* the plaintiff was involved in an automobile accident. *See id.* at 23, 731 P.2d at 159. The State paid for the plaintiff's medical expenses, similar to the case at hand. *See id.* Thereafter, the plaintiff sued another party for damages arising out of the accident. *See id.* The State moved to intervene, but before the court would allow it to be a party to the proceedings, the parties reached a settlement and executed a "Release and Indemnity Agreement[.]" *Id.* at 24–25, 731 P.2d at 160. The settlement expressly stated that the sum of $255,000 given "represent[ed] GENERAL DAMAGES only." *Id.*

On appeal, this court looked to the meaning of the word "subrogated" as it is used in HRS § 346–37(c)[9]. *See id.* at 26–27, 731 P.2d at 161. In common law, this court

found subrogation to be " 'the substitution of another person in the place of a creditor in relation to the debt.'" *Id.* (quoting *Kapena v. Kaleleonalani,* 6 Haw. 579, 583, 1885 WL 5066 (1885)). It was concluded that "[t]he substitute is put in all respects in the place of the party to whose rights he [or she] is subrogated." *Id.* In light of the DHS's right of subrogation, this court held that a party such as a plaintiff may not waive the right to special damages, thus avoiding a DHS lien, simply by designating an entire settlement as representing general damages. *See id.,* 731 P.2d at 162. Also, this court held that under the common law theory of restitution, a court has the authority to prevent the unjust enrichment that would result in favor of the defendants from such a waiver.

> Unjust enrichment in this instance could only be prevented if the State is allowed to assert its claim for special damages. Otherwise, *the defendants may have discharged their tort liability for less than what was just in the circumstances at the expense of the State;* and it would then be unjust for them to retain the benefit of the State's assumption of the obligation to pay the accident victim's medical bills.

*Id.* (emphasis added).

Citing *Peters,* the ICA reasoned that, "since settlement of a claim by a medical assistance recipient for 'general damages' only was held in *Peters* not to defeat DHS's statutory lien under HRS § 346–37, we fail to see how settlement by [Petitioner] of his claim for damages, without specifying whether the damages are general or special, can operate to defeat DHS's lien." ICA's opinion, 101 Hawai'i at 483, 71 P.3d at 434.

■ It is arguable that the ICA erred in this determination. *See* HRS § 346–37(c) ("[t]he department shall have a right to recover from the third person an amount not to exceed the costs of medical assistance" and the department shall have a right to subrogation against a third person for *"special damages"*[10] (emphasis added)). The import of

**9.** *See supra* note 6.

**10.** In addition, the legislative history of HRS § 346–29 suggests that the legislature found the distinction between special and general damages significant:

> Your Committee agrees with the intent of the bill that the department be subrogated to any

*Peters* is that a determination as to whether "the defendants ... have discharged their tort liability[, including liability for special damages,] for less than what was just in the circumstances at the expense of the State[,]" 69 Haw. at 29, 731 P.2d at 162, may be necessary to ascertain what is due and owing to DHS. However, any error in this regard is harmless under the particular circumstances of this case, inasmuch as Petitioner waived the requirement that the proportion of the settlement attributable to special damages be ascertained on remand.

For, following the court's order to remand to the hearings officer for further findings, Petitioner and DHS filed a joint motion for reconsideration expressly stating that remand was not necessary, and that, "[w]hile no portion of the settlement has been identified as special damages, *there is no dispute that the DHS lien is to be satisfied from the settlement proceeds. Rather the dispute is as to the amount DHS should be reimbursed* or is otherwise entitled." (Emphasis added.) Thus, Petitioner conceded that the State's lien might be satisfied from the settlement amount in general. Hence, the ICA's conclusion that a designation of special damages was unnecessary was not error under the conditions agreed to in the parties' motion for reconsideration.

## V.

### A.

■ The heart of Petitioner's argument is that, under principles of equity, the State should receive only a pro rata share of the recovery from a third-party tortfeasor. In support of this argument, Petitioner cites to several cases analyzing the Federal Medical Care Recovery Act (FMCRA), 42 U.S.C.A. § 2651 (Supp.1998), which contains several provisions similar to HRS § 346–37. *See, e.g., Commercial Union Ins. Co. v. United States,* 999 F.2d 581, 589 (D.C.Cir.1993); *Cockerham v. Garvin,* 768 F.2d 784, 787 (6th Cir.1985). For instance, in *Commercial Union,* the court held that the governmental claim in recovering its expenses does not have priority over the injured party's claim. *See* 999 F.2d at 586. The *Commercial Union* court explained that "there is nothing in [FMCRA's] language to suggest that the Government's claim has a priority over the employee's." [11]  *Id.* Moreover, section 2652(c), which is substantially similar to HRS § 46–37(j), states that "[n]o action taken by the United States in connection with the rights afforded under this legislation shall operate to deny to the injured person the recovery for that portion of his [or her] damage not covered hereunder."

The ICA observed, however, that the FMCRA does not contain a provision similar to HRS § 346–37(e), which grants to the State "a lien in the amount of the costs of medical assistance ... made against the proceeds from special damages awarded in a suit or settlement" to the injured party. Also, the FMCRA does not contain a provision requiring that a settling third party satisfy the lien before distributing settlement proceeds:

right or claim that a claimant has against a third person to the extent of the amount of medical assistance or burial payment furnished by the department.

*However, your Committee feels that such subrogation should be limited to rights or claims for special damages and not include rights or claims for general damages.*

*Your Committee finds that the nature of the claims for medical assistance or burial payments are as a special damages and that it would be inequitable to allow the department to be subrogated to the extent of claims for general damages.* General damages include damages for pain and suffering, loss of limbs and physical disability incurred, while special damages would include medical payments and burial payments made. Your Committee feels that such subrogation should be limited to similar claims against third parties as are reflected in special damage claims.

Sen. Stand. Comm. Rep. No. 894–80, in 1980 Senate Journal, at 1449 (emphasis added).

11.  The language cited by the *Commercial Union* court, 28 U.S.C. § 2651(a), states:

[T]he United States shall have a *right to recover from [third parties] the reasonable value of the care and treatment [paid for by the Government]* and shall as to this right be subrogated to any right or claim that the injured or diseased person ... has against such third person *to the extent of the reasonable value of the care and treatment so furnished or to be furnished.*

*Commercial Union,* 999 F.2d at 586 (emphases in original).

If a notice of lien is properly served upon the third person under subsection (c), the third person's agent or attorney, or upon the third person's insurance company, as provided in subsection (f), *it shall be the responsibility of the third person to satisfy the lien prior to disbursing any of the proceeds to the claimant's attorney.*

HRS § 346–37(e) (emphasis added). The ICA, thus, distinguished the cases cited by Petitioner on the ground that, "[u]nlike the FMCRA, the clear and unambiguous language of HRS § 346–37, when construed as a whole and in conjunction with 42 U.S.C. § 1396 et seq., establishes a priority that the medical assistance lien be paid to DHS before the recipient of the medical assistance is reimbursed." ICA opinion, 101 Hawai'i at 486, 71 P.3d at 437.[12]

Petitioner argues that the ICA's decision would render HRS § 346–37(j) a nullity because DHS would be allowed to recover its lien in full, potentially leaving a claimant with nothing. HRS § 346–37(j) states that "[n]o action taken by [DHS] in connection with the rights under this section shall deny to the claimant the recovery for that portion of the claimant's damage not covered under this section." It appears, and Petitioner does not contend otherwise, that "section" refers to HRS § 346–37 in its entirety, as subsection (j) is otherwise silent.

In our view, HRS § 346–37(j) prohibits DHS's action with respect to any portion of the claimant's damages that is "not covered under this section[,]" *i.e.*, HRS § 346–37. This means that DHS cannot interfere with a claimant's rights of recovery unless HRS § 346–37 allows otherwise. In that regard, HRS § 346–37 permits the DHS to recover its costs for medical assistance through a lien on special damages. *See* HRS 346–37(e) ("the department shall have a lien in the amount of the costs of medical assistance . . .

[from] proceeds from special damages awarded in a suit or settlement"). So construed, HRS § 346–37(j) grants the State recovery of its costs for medical assistance from special damages and does not limit the State to accepting a pro rata share of Petitioner's recovery. We note further, however, that while HRS § 346–37 does not obligate DHS to agree to a pro rata reduction of its lien for medical assistance payments, HRS § 346–37(e) permits the DHS discretion to settle or compromise its subrogation or lien rights under HRS § 346–37. ("This section is not intended to restrict or diminish the right of the department to settle or compromise its subrogation or lien rights provided herein."). In this case, DHS apparently decided to forego such a course.[13] To the extent the ICA's interpretation regarding priority of payments conflicts with this view, we clarify it. Accordingly, as *Peters* held, a settling plaintiff cannot waive recovery of special damages, but the State is entitled to and may recover its medical assistance expenses from the special damages obtained.

### B.

Finally, Petitioner argues that, under *Peters*, this court stated that the State "steps into the shoes" of a claimant and accordingly the State cannot collect a larger percentage of the total potential damages than what Petitioner collects, *i.e.*, if a petitioner receives fifteen percent of his or her damages in a settlement, then correspondingly the State can only receive fifteen percent of its lien. Petitioner's argument, however, is inconsistent with the reasoning applied in *Peters*. The "steps into the shoes" statement meant that a party could not waive its rights to special damages, as such action would deprive the State of its statutory right to subrogation. Similarly, here, Petitioner could not have chosen to reduce the State's lien by

---

12. HRS § 346–37(e) also provides that "regardless of who institutes legal proceedings or seeks other means of recovering, the department *shall have a lien in the amount of the costs of medical assistance* or burial payment[.]" (Emphasis added.) HRS § 346–37(f) provides that the notice of lien shall state that "the claimant's attorney *shall pay the amount of the lien* from the proceeds of any judgment, settlement, or compromise based on the incident or accident[.]" (Emphasis add-

ed.) Personal liability is imposed on any "person failing to satisfy the lien as required . . . although able to do so from the proceeds of the suit or settlement." HRS § 346–37(i).

13. Whether this was dictated by federal statute or otherwise is not conclusively established in the record.

accepting a reduced settlement. There is no indication from the holding in *Peters,* or in HRS § 346–37, that such a result was contemplated or intended.

## VI.

 Petitioner also argues that the assignment of rights is an adhesion contract and thus unenforceable. This court has held that an adhesion contract "is a form contract created by the stronger of the contracting parties" and the terms "unexpectedly or unconscionably limit the obligations and liability" of the weaker party. *Leong v. Kaiser Found. Hosp.,* 71 Haw. 240, 247, 788 P.2d 164, 168 (1990) (quoting *Robin v. Blue Cross Hosp. Serv., Inc.,* 637 S.W.2d 695, 697 (Mo. 1982) (citations omitted)); *see also Brown v. KFC Nat'l Mgmt. Co.,* 82 Hawai'i 226, 247, 921 P.2d 146, 167 (1996). Here, the assignment of rights does not unfairly advantage the State, as the intent of the assignment is to merely recover expenses paid for medical damages. As the ICA noted, Petitioner

> was not forced to apply for medical assistance benefits from DHS. Moreover, he paid nothing in order to receive such benefits. Since his medical assistance benefits were paid for by the federal and state taxpayers, Congress and the legislature clearly had a significant interest in ensuring that the public fisc be reimbursed if [Petitioner] were able to collect damages from a third party for the injuries that led to [Petitioner's] need for medical assistance benefits from DHS.

ICA opinion, 101 Hawai'i at 481, 71 P.3d at 432.

Moreover, the assignment of rights appears to track the language of HRS § 346–37, as it allows the State to recover money only "up to the amount of assistance granted." It is questionable whether voiding the assignment of rights contract would have any impact upon the State's right to collect pursuant to HRS § 346–37, inasmuch as the statute must be deemed to be controlling.

## VII.

With the foregoing clarification, we affirm the ICA's September 11, 2002 opinion.

Dissenting Opinion by MOON, C.J., in which NAKAYAMA, J., joins.

I respectfully dissent. In the present case, the majority notes that "[i]t is arguable that the [Intermediate Court of Appeals (ICA)] erred" in its interpretation of *Peters v. Weatherwax,* 69 Haw. 21, 731 P.2d 157 (1987). Majority Opinion, 101 Hawai'i at 470, 71 P.3d at 421. Nevertheless, the majority concludes that "any error in this regard is harmless under the particular circumstances of this case" and goes on the interpret Hawai'i Revised Statutes (HRS) § 346–37 (Supp.1997) in a manner consistent with both *Peters* and the ICA's disposition in the present case. Majority Opinion at 11–17. Therefore, unlike *State v. Hanson,* 97 Hawai'i 71, 73, 34 P.3d 1, 3 (2001) and *Korsak v. Hawai'i Permanente Medical Group,* 94 Hawai'i 297, 300, 12 P.3d 1238 (2000), the present case does not contain grave errors or obvious inconsistencies dictating the need for any clarification by this court. *See* HRS § 602–59 (1993). Accordingly, I would dismiss certiorari as improvidently granted.