71 P.3d 424

**Gerry NACINO, Appellant–Appellee,**

v.

**Susan M. CHANDLER, Director, Department of Human Services, State of Hawai'i, Appellee–Appellant.**

**No. 23572.**

Intermediate Court of Appeals of Hawai'i.

Sept. 11, 2002.

Certiorari Granted Oct. 21, 2002.

Michael S. Vincent, Deputy Attorney General, State of Hawaiʻi, on the briefs, for appellee-appellant.

Howard Glickstein, Honolulu, on the briefs, for appellant-appellee.

BURNS, C.J., WATANABE, and FOLEY, JJ.

Opinion of the Court by WATANABE, J.

The sole issue presented by this appeal is whether the Circuit Court of the First Circuit (the circuit court) properly reduced from $141,422.19 to $21,213.33 the medical assistance lien which the State of Hawaii, Department of Human Services (DHS) held pursuant to Hawaii Revised Statutes (HRS) § 346-37 (1993 & Supp.1997) against the $600,000.00 in settlement proceeds that Appellant–Appellee Gerry Nacino (Nacino), a Medicaid benefits recipient, recovered from a third-party tortfeasor.

We conclude that the circuit court incorrectly reduced DHS's medical assistance lien amount. Accordingly, we reverse that portion of the Final Judgment. The Final Judgment is affirmed in all other respects.[1]

## BACKGROUND

The relevant facts in this case are not in dispute. On March 15, 1996, Nacino, who was twenty-two years old, suffered severe and permanent brain and orthopedic injuries when a moped on which he was a passenger and which was being driven by a seventeen-year-old acquaintance, Troy Sunio (Sunio), collided with a pick-up truck owned by the City and County of Honolulu (the City). Nacino's damages as a result of his injuries included: severe pain and suffering; emotional distress; loss of enjoyment of life; loss of wages and/or lifetime earning capacity; and medical, hospital, rehabilitative, attendant, institutional, nursing, and life care costs.[2]

Pursuant to applications submitted by Nacino or on his behalf, DHS paid for all of Nacino's medical care and treatment expenses arising out of the moped incident. Each of these applications included one of the following assignment of rights provisions,

---

1. No appeal was taken by Appellant–Appellee Gerry Nacino (Nacino) from that portion of the Final Judgment entered on July 7, 2000 that determined that "[t]he forty percent (40%) contingency fee or cost [of Nacino's attorney] should not be subtracted from the [State of Hawaiʻi's] Medicaid reimbursement share, but shall be born[e] by [Nacino]."

2. Expert witnesses retained by Nacino were prepared to testify that Nacino's general damages included $1,080,000.00 for loss of future wages, $230,000.00 for lost fringe benefits, and $170,000.00 for loss in value of household work which Nacino was no longer able to perform. Additionally, Nacino's special damages amounted to $2.925 to $4.105 million, depending on the variables of a life care plan for Nacino.

as required by HRS § 346–29(c) (Supp. 2001)[3]:

**(6) ASSIGNMENT AND AGREEMENT:**

Assignment of rights: I understand that by applying for medical assistance, I am assigning to the State of Hawaii [ (the State) ], my rights to medical support or any other third party payments for medical care the entire time I am receiving assistance.

**(7) ASSIGNMENTS AND AGREEMENT:**

• **ASSIGNMENT OF RIGHTS**: ... I am assigning to the [State] my rights to any third party payments for medical care. I will cooperate in obtaining third party payments. I must use my household's private medical coverage before Medicaid will help with eligible costs.

Nacino also executed a separate DHS Assignment of Payment form, which provided, in pertinent part:

FOR VALUE RECEIVED, [Nacino] hereby hereby [sic] assigns to [DHS] ... and authorizes any of my representatives, agents, attorneys or insurers to pay to DHS, from any money due me as compensation for injuries received in, and medical costs incurred as a result of, an accident or incident on or about March 15, 1996 a sum of money equal to that paid by DHS for my hospital, medical and other similar expenses necessitated by said accident or incident.

Should compensation for my injuries received in the above referenced accident be paid to me directly, I agree to reimburse

[DHS] the medical costs paid on my behalf as a result of said accident from any judgment, settlement or insurance proceeds received.

On June 28, 1996, Nacino, by his guardian ad litem, filed a lawsuit in the circuit court against Sunio and the City, seeking to recover damages from Sunio and the City as a result of the March 15, 1996 accident. Although authorized by HRS § 346–37(c) (Supp.1997)[4] to intervene in the lawsuit, DHS did not do so. However, DHS did provide numerous notices to the attorneys representing the parties to the lawsuit, as well as interested insurers and other interested parties, that it held an assignment of Nacino's rights in any recovery and would pursue reimbursement due to it at the appropriate time. DHS also filed a notice in Nacino's lawsuit of DHS's "medical assistance lien existing pursuant to [HRS] § 346–37, for medical payments made on behalf of [Nacino]."

There were significant weaknesses in Nacino's case against the City. Regarding liability, the only competent witnesses to the accident were the driver and passenger of the City pick-up truck, who both claimed that the moped was speeding and on the wrong side of the road when the accident occurred. Although Nacino disputed these witnesses' claim, proving his position would be difficult, since Sunio had "disappeared" before he could be deposed and Nacino himself had very limited recollection of the accident. In addition, the City was prepared to offer evidence that: Nacino and Sunio had been tres-

---

3. Hawai'i Revised Statutes (HRS) § 346–29(c) (Supp.2001) provides now, as it did at all times relevant to this lawsuit, as follows:

In determining eligibility for medical assistance, [DHS] shall require from all applicants and recipients the assignment of any benefits due to a third party liability. Any rights or amounts so assigned shall be applied against the cost of medical care paid under this chapter.

4. HRS § 346–37 (Supp.1997) provided, in relevant part, as follows:

**Recovery of payments and costs of medical assistance.** ...

...

(c) If [the State of Hawai'i, Department of Human Services (DHS) ] has provided medical

assistance ... to a person who was injured, ... creating a tort or other liability against a third person, [DHS] shall have a right to recover from the third person an amount not to exceed the costs of medical assistance ... furnished or to be furnished by [DHS]. [DHS] shall as to this right be subrogated to any right or claim that a claimant, defined in subsection (k), has against the third person for special damages to the extent of the cost of medical assistance ... furnished or to be furnished by [DHS].

To enforce its rights, [DHS] may intervene or join in any action or proceeding brought by a claimant against the third person who is liable.

passing at the time of the accident; the moped was a stolen vehicle that had been "jury-rigged" to the moped's battery in order to be operable; and Nacino was contributorily negligent for not wearing a helmet or other form of protection and for riding on the back of the moped, which, by law, was allowed to carry only one person, the driver.

By a letter dated March 24, 1998, Nacino's attorney informed DHS's attorney of a proposal by the City's attorney to recommend settlement of Nacino's case for $600,000.00 and sought from DHS "a waiver or, if that is not possible, a very substantial discounting of [DHS's] lien in this matter," which at the time, amounted to $141,422.19. Nacino's attorney also proposed establishing a "special needs trust" [5] for the benefit of Nacino, explaining, in part, as follows:

The great advantage this trust has is that it would allow [Nacino] to continue to receive the safety net benefits he currently receives, and the proceeds from the trust, administered by a trustee, could be used to benefit him in ways the government programs do not, by, for example, providing attendant care or companion services which he needs because he is subject to seizures, despite the fact that he is on two anti-seizure medications.... [Nacino's] girlfriend had to quit work in order to take care of him and be with him during the days, and the trust proceeds could be used to relieve her of this responsibility, in order to allow her to return to school to pursue her desire to be an accountant. I am also advised that it might be possible for the trust to purchase a modest apartment or residence for them; and that pursuant to statute, that residence, if purchased, would be the source of reimbursement to the State. In confidence, my client has expressed interest in a settlement at that amount, if it is possible to get a waiver of the State's lien in this matter. With a waiver, the amount that would be available to fund the trust after attorney's fees and costs would be somewhere in the neighborhood of $350–360,-000.00.

On the other hand, if the lien must be repaid, the amount available to fund the trust would be about $210–220,000.00. At this figure, the purchase of a residence would be out of the question, in that it would use up all or nearly all of the trust proceeds, leaving nothing for the balance of [Nacino's] life. If the lien has to be repaid, it might well make the difference between my client's agreement to settlement at the figure suggested by the City, or his decision to "roll the dice" and go to trial, even though our chances of doing as well or better than the City's offer are slim.... [I]n this particular case, I know that if we are unsuccessful in the case, there is no possibility of recovering the costs from my client, so on that level, a decision to roll the dice is, from his point of view, not affected by any responsibility to reimburse us for costs.

By a letter dated March 25, 1998, DHS's attorney responded that DHS was "unable to agree to a reduction" of its lien because by federal law, DHS was required to seek reimbursement from a liable third party unless DHS determined that "[r]ecovery efforts ... are not cost effective." (Citing 42 Code of Federal Regulations (CFR) § 433.139(f)(1).) Furthermore, federal financial participation in the Medicaid program would not be available to the State if it "fails to fulfill the requirements of 42 CFR §§ 433.138 and 433.139 with regard to establishing liability and seeking reimbursement from third parties." DHS's attorney noted that even if DHS's lien were paid in full, Nacino would

---

**5.** In *Cuello v. Valley Farm Workers Clinic, Inc.,* 91 Wash.App. 307, 957 P.2d 1258, 1260 (1998), the court stated:

In 1993, Congress amended the Social Security Act by redefining the status of assets held in trust for a Medicaid recipient. *Norwest Bank North Dakota, N.A. v. Doth,* 969 F.Supp. 532, 533 (D.Minn.1997). It amended 42 U.S.C. §§ 1396p(d) to allow a disabled individual to place assets into a special needs trust without being disqualified from receiving Medicaid. *Id.* at 534. A special needs trust contains the assets of a disabled individual established for the benefit of the individual and, upon the death of the individual, the state will receive from the trust the amount remaining in the trust up to the total medical assistance provided by the state. 42 U.S.C. §§ 1396p(d)(4)(A).

still receive $210,000.00 to $220,000.00 [6] and expressed concern about Nacino's attorney's statement that if DHS's lien had to be repaid, Nacino may decide "to 'roll the dice' and go to trial[.]" DHS's attorney reminded Nacino's attorney that

> [when Nacino] applied for medical assistance, he agreed to cooperate in obtaining third party payments.... [Nacino's] cooperation in obtaining third party payments is a requirement for him to receive, or continue receiving, medical assistance from the State....
>
>    ....
>
> By law, [Nacino] is required to cooperate and assist the State in recovering third party payments. Failure to cooperate as required can result in a denial, or termination, of medical assistance benefits pursuant to § 17–1705–10(a), Hawaii Administrative Rules[.]
>
>    ....
>
> You should note that there is little discretion in § 17–1705–10(a), Hawaii Administrative Rules. If it is determined that a claimant has refused to cooperate in obtaining third party benefits and the claimant is unable to establish good cause, [DHS] must deny or terminate medical assistance.
>
> By law, [Nacino] is required to assist the State in recovering third party payments unless good cause exists. You should note that in these types of cases, dismissing a third party case by a claimant unless the claimant is sufficiently compensated does not constitute good cause. Likewise, the State would be very concerned if a claimant was given a substantial settlement offer and elected to take a matter to trial simply because reimbursement of the Medicaid lien would reduce the amount he would receive....
>
>    ....
>
> If [Nacino] were to decide to drop the case, or pursue the matter to trial under the circumstances of this case, because he was unable to recover a specific amount out of the settlement that is on the table in front of him, we would be required to refer

this matter to DHS for a determination regarding whether [Nacino] was in compliance with the above sections from the Hawaii Administrative Rules regarding cooperation in obtaining third party payments and recommend that appropriate action be taken if [Nacino] took any action that would jeopardize reimbursement of the above-referenced lien.

Nacino eventually accepted the City's settlement offer and placed the lien amount of $141,422.19 in an interest-bearing account. On June 25, 1998, Nacino requested an administrative hearing to address DHS's refusal to reduce the amount of the lien. In addition, on July 1, 1998, Nacino filed a judicial motion to resolve the issue in circuit court. On September 25, 1998, the DHS Administrative Appeals Office *sua sponte* dismissed Nacino's request for administrative review, on grounds that "the issues presented at the administrative level by the parties are purely legal and would be best decided by the [c]ircuit [c]ourt where the action is now pending." A November 30, 1998 minute order entered by a circuit court clerk pursuant to an oral order of the circuit court, the Honorable Kevin S.C. Chang (Judge Chang) presiding, also denied review of the issue, concluding that the circuit court lacked jurisdiction because Nacino had not exhausted his administrative remedies. Nacino filed a motion for reconsideration from this order, which was denied by an order dated April 15, 1999.

By a letter dated March 29, 1999 to the DHS Administrative Appeals Office, Nacino requested a hearing on the dispute between Nacino and DHS concerning DHS's refusal "to subtract from the Medicaid benefits paid any amount for the liability difficulties in the case or for attorney's fees and costs" when "[d]eduction for these items is mandated by law." Following an administrative hearing held on June 18, 1999, a DHS hearing officer issued a written decision, dated August 2, 1999, which held, in relevant part, as follows:

## II. Decision and Order

The facts show that the State established a Medicaid lien pursuant to [HRS § ] 346–37 in the amount of $141,422.19 for

---

**6.** DHS subsequently learned that Nacino had also received the benefit of two insurance settlements totaling $55,000.00 as a result of the moped accident.

medical assistance provided [Nacino] for his injuries suffered in the March 15, 1996 accident which he received $600,000.00 from the [City] to settle a personal injury law suit. DHS rules and statutes do not require that the State discount its Medicaid lien the same percent that [Nacino] discounted the value of his personal injury lawsuit and settled for which was significantly less than his actual damages because of liability problems. Even if it would be fair and equitable for DHS to discount its Medicaid lien, a DHS hearing officer does not have equity jurisdiction to make such a determination. [DHS] shall recover the amount of $141,422.19 for medical assistance provided [Nacino]. . . .

. . . .

## VI. Conclusion

The preponderance of evidence shows [DHS] has established a Medicaid lien for $144,422.19 against [Nacino]. No rules or statutes applicable to this case require the [DHS] to discount its lien in equal proportion to what [Nacino] discounted his personal injury claim in settling his civil lawsuit. DHS hearing officers do not have equity jurisdiction to determine whether in fairness the State is required to discount its Medicaid lien. [DHS] shall recover the amount of $141,422.19 for medical assistance provided [Nacino].

On August 31, 1999, Nacino filed a notice of appeal to the circuit court. Susan M. Chandler, Director of DHS, was named as the appellee in the case. On January 31, 2000, the circuit court, the Honorable Allene Suemori (Judge Suemori) presiding, heard oral arguments from Nacino and DHS regarding their positions as to the lien issue.[7] On February 7, 2000, Judge Suemori entered a Minute Order, determining that pursuant to HRS § 346–37(e), DHS can attach a lien on the $600,000.00 settlement proceeds received by DHS and for the amount of the costs of medical assistance furnished to Nacino by DHS. The circuit court also ordered the case remanded to the DHS hearings officer

so that an evidentiary hearing can take place and findings of fact drafted on

whether or not special damages were awarded. If special damages were awarded, [DHS] can only recover from [Nacino] that amount. . . . If no special damages were awarded, [DHS] would still have a right of reimbursement from [the City] under the doctrine of subrogation.

On February 16, 2000, Nacino and DHS filed a joint motion for reconsideration of the circuit court's February 7, 2000 order, in which they both agreed that a remand was unnecessary because there was no dispute that: the case between Nacino and the City settled for $600,000.00; no portion of the $600,000.00 was denominated special damages; and the DHS lien was to be satisfied from the settlement proceeds. The real substantive issue, the parties declared, was "the amount DHS should be reimbursed or is otherwise entitled" to, an issue which the court could decide without remand.

On April 14, 2000, Judge Suemori entered an order granting the joint motion for reconsideration, which concluded as follows:

Having reviewed the file and memorandum of counsel, the [c]ourt GRANTS the Joint Motion for Reconsideration and finds that the total damages suffered was FOUR MILLION DOLLARS ($4,000,000.00). The settlement OF SIX HUNDRED THOUSAND DOLLARS ($600,000.00) constituted fifteen percent (15%) of the total damages suffered. Fifteen percent (15%) of ONE HUNDRED FORTY ONE THOUSAND FOUR HUNDRED TWENTY TWO DOLLARS AND NINETEEN CENTS ($141,422.19), which is the State's Medicaid costs, IS TWENTY–ONE THOUSAND TWO HUNDRED THIRTEEN DOLLARS AND THIRTY–THREE CENTS ($21,213.33), which shall be the reimbursement by [Nacino] to the State for Medicaid costs.

The [c]ourt does not find that the forty percent (40%) contingency fee or cost should be subtracted from the State's Medicaid reimbursement share, but finds that it should be borne by [Nacino].

On July 7, 2000, the circuit court entered a final judgment, which concluded, in relevant part, as follows:

---

7. The transcripts from this hearing are not in the  record.

The settlement of SIX HUNDRED THOUSAND DOLLARS ($600,000.00) constituted fifteen percent (15%) of the total damages suffered. Fifteen percent (15%) of ONE HUNDRED FORTY ONE THOUSAND FOUR HUNDRED TWENTY TWO DOLLARS AND NINETEEN CENTS ($141,422,19) [sic], which is the State's Medicaid costs, is TWENTY–ONE THOUSAND TWO HUNDRED THIRTEEN DOLLARS AND THIRTY THREE CENTS ($21,213.33), which shall be the reimbursement by [Nacino] to the State for Medicaid costs.

The forty percent (40%) contingency fee or cost should not be subtracted from the State's Medicaid reimbursement share, but shall be borne by [Nacino].

On the same day that the final judgment was entered, DHS filed its notice of appeal.

## DISCUSSION

A. *The Federal Requirements Regarding the Priority of DHS's Medical Assistance Lien*

In 1965, Congress enacted Title XIX of the Social Security Act, 42 U.S.C.A. § 1396 et. seq. (the Medicaid Act), to "provide a nation-wide program of medical assistance for low-income families and individuals." [8] *RCJ Medical Services Inc. v. Bonta*, 91 Cal. App.4th 986, 993, 111 Cal.Rptr.2d 223, 226 (2001). The program established by the Medicaid Act is a joint venture between the federal government and participating states, and those "states that choose to participate must comply with certain federal Medicaid requirements[.]" *HCMF Corp. v. Allen*, 238 F.3d 273, 275 (4th Cir.2001). For example, "[i]n order to contain program costs and ensure that Medicaid remains the 'payor of last resort[,]' States must 'take all reasonable measures to ascertain the legal liability of third parties * * * to pay for care and services available under the plan,' and seek reimbursement from them (42 U.S.C. § 1396a[a][25][A],[B] )." *Calvanese v. Calvanese*, 93 N.Y.2d 111, 116, 710 N.E.2d 1079, 1080, 688 N.Y.S.2d 479, 481 (1999) (citations omitted). The federal requirement for recoupment of Medicaid funds from responsible third parties, set forth in 42 U.S.C.A. § 1396k,[9] provides that a state plan must "include assignment, enforcement and collection mechanisms[.]" *Cricchio v. Pennisi*, 90

**8.** 42 U.S.C.A. § 1396, entitled "Appropriations[,]" which is part of Title XIX, entitled "Grants to States for Medical Assistance Programs," provides:

For the purpose of enabling each State, as far as practicable under the conditions in such State, to furnish (1) medical assistance on behalf of families with dependent children and of aged, blind, or disabled individuals, whose income and resources are insufficient to meet the costs of necessary medical services, and (2) rehabilitation and other services to help such families and individuals attain or retain capability for independence or self-care, there is hereby authorized to be appropriated for each fiscal year a sum sufficient to carry out the purposes of this subchapter. The sums made available under this section shall be used for making payments to States which have submitted, and had approved by the Secretary, State plans for medical assistance.

**9.** 42 U.S.C.A. § 1396k provides, in relevant part:

**Assignment, enforcement, and collection of rights of payments for medical care; establishment of procedures pursuant to State plan; amounts retained by State**

(a) For the purpose of assisting in the collection of medical support payments and other payments for medical care owed to recipients of medical assistance under the State plan approved under this subchapter, a State plan for medical assistance shall—

(1) provide that, as a condition of eligibility for medical assistance under the State plan to an individual who has the legal capacity to execute an assignment for himself, the individual is required—

(A) to assign the State any rights, of the individual or of any other person who is eligible for medical assistance under this subchapter and on whose behalf the individual has the legal authority to execute an assignment of such rights, to support (specified as support for the purpose of medical care by a court or administrative order) and to payment for medical care from any third party;

(B) to cooperate with the State ... (ii) in obtaining support and payments (described in subparagraph (A)) for himself and for such person, unless (in either case) the individual is described in section 1396a(*l* )(1)(A) of this title or the individual is found to have good cause for refusing to cooperate as determined by the State agency in accordance with standards prescribed by the Secretary, which standards shall take into consideration the best interests of the individuals involved; and

(C) to cooperate with the State in identifying, and providing information to assist the

N.Y.2d 296, 305, 683 N.E.2d 301, 304, 660 N.Y.S.2d 679, 682 (1997).

> Specifically, as a condition of eligibility, an applicant must assign to [DHS] any rights he or she has to seek reimbursement from any third party up to the amount of medical assistance paid. Additionally, a Medicaid recipient must "cooperate with the State in identifying, and providing information to assist the State in pursuing, any third party who may be liable for care and services available under the plan," unless good cause exists for his or her refusal to cooperate.
>
> . . . .
>
> Pursuant to 42 USC § 1396k, when reimbursement is sought from responsible third parties through the assignment provisions, States are to first "retain" that portion "of any amount collected * * * as is necessary to reimburse it for medical assistance payments made on behalf of an individual with respect to whom such assignment was executed ... and the *remainder* of such amount collected shall be paid to such individual[.]"

90 N.Y.2d at 305–07, 683 N.E.2d at 304, 660 N.Y.S.2d at 682 (quoting 42 U.S.C. § 1396k(b); citations omitted, emphasis and ellipses in original); *see also* 42 C.F.R. 433.154.[10] The court in *Cricchio* concluded

> State in pursuing, any third party who may be liable to pay for care and services available under the plan, unless such individual has good cause for refusing to cooperate as determined by the State agency in accordance with standards prescribed by the Secretary, which standards shall take into consideration the best interests of the individuals involved; and
>
> (2) provide for entering into cooperative arrangements (including financial arrangements), with any appropriate agency of any State (including, with respect to the enforcement and collection of rights of payment for medical care by or through a parent, with a State's agency established or designated under section 654(3) of this title) and with appropriate courts and law enforcement officials, to assist the agency or agencies administering the State plan with respect to (A) the enforcement and collection of rights to support or payment assigned under this section and (B) any other matters of common concern.
>
> (b) *Such part of any amount collected by the State under an assignment made under the provisions of this section shall be retained by the State as is necessary to reimburse it for medical assistance payments made on behalf of an indi-*

that the foregoing provision "indicates that the government has priority in recouping funds from third parties who are liable for Medicaid recipient's medical expenses, and that only the remainder of those funds becomes available to the Medicaid recipient for placement in a trust or other uses." 90 N.Y.2d at 307, 683 N.E.2d at 304, 660 N.Y.S.2d at 682. *See also Cuello v. Valley Farm Workers Clinic, Inc.*, 91 Wash.App. 307, 957 P.2d 1258, 1260 (1998) ("Under 42 U.S.C. § 1396k(b) the state is the first to retain the portion of the amount collected as necessary to reimburse it for payment made on behalf of the recipient. This indicates the state has priority in recouping funds from third parties who are liable for a recipient's medical expenses. Only the remainder of the funds are available to the Medicaid recipient for placement in a trust or other use.") (citation omitted).

### B. The Hawai'i Requirements Regarding the Priority of DHS's Medical Assistance Lien

Pursuant to the federal mandate requiring recoupment of Medicaid payments, the Hawai'i legislature enacted HRS § 346–37. At the time this case was filed, HRS § 346–37 (Supp.1997)[11] provided, in relevant part:

> *vidual with respect to whom such assignment was executed (with appropriate reimbursement of the Federal Government to the extent of its participation in the financing of such medical assistance), and the remainder of such amount collected shall be paid to such individual.*
> (Emphasis added.)

**10.** 42 C.F.R § 433.154 provides:

**Distribution of collections.**
The agency must distribute collections as follows—
(a) To itself, an amount equal to State Medicaid expenditures for the individual on whose right the collection was based.
(b) To the Federal Government, the Federal share of the State Medicaid expenditures, minus any incentive payment made in accordance with § 433.153.
(c) To the recipient, any remaining amount. This amount must be treated as income or resources under Part 435 or Part 436 of this subchapter, as appropriate.

**11.** HRS § 346–37 was subsequently amended by Act 52, 1999 Haw. Sess. L. 59 and Act 50, 2001

**Recovery of payments and costs of medical assistance.**

. . . .

(c) If [DHS] has provided medical assistance . . . to a person who was injured . . . under circumstances creating a tort or other liability against a third person, [DHS] shall have a right to recover from the third person an amount not to exceed the costs of medical assistance . . . payment furnished or to be furnished by [DHS]. *[DHS] shall as to this right be subrogated to any right or claim that a claimant, defined in subsection (k), has against the third person for special damages to the extent of the costs of medical assistance . . . furnished or to be furnished by [DHS].*

To enforce its rights, [DHS] may intervene or join in any action or proceeding brought by a claimant against the third person who is liable. If the action or proceeding is not commenced within six months after the first day on which medical assistance . . . is furnished by [DHS] in connection with the injury . . . involved, [DHS] may institute and prosecute legal proceedings against the third person who is liable for the injury, . . . in a state court, either alone (in its own name or in the name of a claimant) or in conjunction with the claimant.

(d) If a claim is made by the claimant under subsection (c) against a third person, the claimant shall give timely notice of the action to [DHS]. An attorney representing a claimant shall make reasonable inquiry as to whether the claimant has received or is receiving medical assistance related to the incident involved in the action from [DHS]. Upon obtaining a judgment or reaching a settlement through negotiation or legal proceedings, but before the release of any award or settlement proceeds to any person:

(1) The claimant's attorney, if the attorney has received actual notice from [DHS] of a lien or if the attorney has reason to know that a lien exists, or

(2) The claimant or the claimant's heirs, representatives, or beneficiaries, if not represented by an attorney who has received actual notice of the lien, shall notify [DHS] immediately.

(e) *If third party liability is found to exist, or if the issue of third party liability is settled or compromised without a finding of liability, regardless of who institutes legal proceedings or seeks other means of recovering, [DHS] shall have a lien in the amount of the costs of medical assistance . . . made against the proceeds from special damages awarded in a suit or settlement.* The lien shall attach as provided by subsection (f). If a notice of lien is properly served upon the attorney representing the claimant as provided in subsection (f), that attorney shall satisfy the lien prior to disbursing any of the proceeds of the suit or settlement to the attorney's client. If a notice of lien is properly served upon the third person under subsection (c), the third person's agent or attorney, or upon the third person's insurance company, as provided in subsection (f), *it shall be the responsibility of the third person to satisfy the lien prior to disbursing any of the proceeds to the claimant's attorney.* This section is not intended to restrict or diminish the right of the department to settle or compromise its subrogation or lien rights under this section.

(f) The lien of [DHS] for reimbursement of costs of medical assistance . . . under subsection (e), shall not attach unless a notice of lien is served upon the claimant's attorney or upon the third person, the third person's agent, attorney, or insurance company. The method of service shall be by registered mail, return receipt requested, or by delivery of the notice of lien personally to the individuals referred to. Service by registered mail is complete upon receipt. The notice of lien shall state the name of the injured . . . person, the amount of the lien, and the date of the accident or incident which caused the inju-

Haw. Sess. L. 79. The 1999 amendments made clear that the State's Medicaid lien in third-party liability situations operates against both special and general damages recovered by a Medicaid recipient. If this case were governed by HRS § 346–37, as amended, Nacino clearly would be required to reimburse DHS for the entire amount of its lien.

ries, ... which necessitated [DHS'] medical assistance ... payments. If the notice of lien is served upon the claimant's attorney, the notice of lien shall state that the claimant's attorney shall pay the amount of the lien from the proceeds of any judgment, settlement, or compromise based on the incident or accident. If the notice of lien is served upon the third person under subsection (c), the third person's agent, attorney, or insurance company, the notice of lien shall state that the third person shall satisfy the lien prior to disbursing any of the proceeds to the claimant or to the claimant's attorney. A notice of lien may be amended from time to time until extinguished, each amendment taking effect upon proper service.

(g) If there is a dispute between the claimant, the claimant's agent, or the claimant's attorney, and [DHS] concerning the existence of the lien or the amount of the lien, the claimant, the claimant's agent, or the claimant's attorney may request in writing a hearing on the dispute. After receipt by [DHS] of a written request, [DHS] shall conduct an administrative hearing within a reasonable period of time. Chapter 91 shall apply to the hearing. Funds sufficient to extinguish the lien rights of [DHS] shall be either retained by the person or entity served with the notice of lien, or shall be paid to [DHS] pending its decision.

. . . .

(i) Any person failing to satisfy the lien as required by subsections (e) and (f), although able to do so from the proceeds of the suit or settlement, shall be personally liable to [DHS] for any damage proximately caused to [DHS] by such failure.

(j) *No action taken by [DHS] in connection with the rights under this section shall deny to the claimant the recovery for that portion of the claimant's damage not covered under this section.*

(k) For purposes of this section, the term "claimant" shall include an injured ... person, the person's guardian, or the personal representative, estate, dependents, or survivors[.]

(*l*) The department may agree with a provider or medical care insurer for the provision of medical care services or medical assistance to any claimant, and the agreement may provide for [DHS] to be the exclusive entity authorized to recover all costs of medical assistance rendered to a claimant. [DHS] may recover all costs through the use of the lien procedures established by this section.

(m) For purposes of this section, the term "costs of medical assistance" furnished or to be furnished by the department shall include:

(1) The value or cost of medical care services provided directly by the department;

(2) The amount paid by the department to a provider for medical care services rendered or to be rendered;

(3) The value or cost of medical care services rendered or to be rendered by a provider that has received the equivalent of an insurance benefit, capitation rate, and other fee or like charge paid by [DHS] or by a medical care insurer to provide for medical care services.

(Emphases added.)

In *Peters v. Weatherwax,* 69 Haw. 21, 731 P.2d 157 (1987), the Hawaiʻi Supreme Court held that an individual who had received medical assistance from DHS for injuries suffered in an automobile accident could not evade the HRS § 346–37(c) (1985) [12] statutory lien against a third-party tortfeasor for special damages by settling a claim against the third party for "general damages" only. Stating that it would not permit "the modicum of ingenuity" displayed by the parties to defeat DHS's statutory lien and unjustly enrich the plaintiffs, 69 Haw. at 28, 731 P.2d at 162, the supreme court explained, in relevant part, as follows:

Upon application for assistance made by [the plaintiff passenger] and his parents,

12. The 1985 version of HRS § 346–37(c) is not materially different from the version of the statute that governed the instant case.

[the Department of Social Services and Housing (DSSH) [13]] paid approximately $15,000 in public funds to various health care providers. In doing so, it "stepped into the shoes" of the accident victim and acquired a right to assert a claim against the person responsible for the accident to recover what it paid. Though [the plaintiff passenger] may have "waived his right to claim special damages" by agreeing to dismiss his action against the defendants in exchange for the payment of $255,000 in general damages, the right to recover medical expenses was not his to waive— the State had been substituted by statute in place of himself and his parents as far as that right is concerned. Furthermore, "although, as between debtor and creditor, the debt may be extinguished, yet, as between the person who has paid the debt and the other parties, the debt is kept alive by the doctrine of subrogation, so far as may be necessary to preserve the securities."

. ... Unjust enrichment in this instance could only be prevented if the State is allowed to assert its claim for special damages. Otherwise, the defendants may have discharged their tort liability for less than what was just in the circumstances at the expense of the State; and it would then be unjust for them to retain the benefit of the State's assumption of the obligation to pay the accident victim's medical bills.

69 Haw. at 28–29, 731 P.2d at 162 (footnote added; citation, footnote, and internal brackets omitted).

### C. *Application of the Law to this Case*

■ In this case, Nacino and the City settled for $600,000.00, without characterizing the damages as general or special. The circuit court concluded that this $600,000.00 settlement amount "constituted fifteen percent (15%) of the total damages suffered" by Nacino. The circuit court then reduced DHS's statutory lien to fifteen percent (15%) of $141,422.19 and determined that DHS was only entitled to be reimbursed the reduced amount, $21,213.33, for its medical assistance expenses on Nacino's behalf. For the follow-

ing reasons, we conclude that the circuit court erred in reducing the amount of DHS's lien.

First, since settlement of a claim by a medical assistance recipient for "general damages" only was held in *Peters* not to defeat DHS's statutory lien under HRS § 346–37, we fail to see how settlement by Nacino of his claim for damages, without specifying whether the damages are general or special, can operate to defeat DHS's lien.

Second, in applying for medical assistance benefits from DHS, Nacino expressly agreed to assign to DHS, from any moneys recovered by him as a result of the moped accident, "a sum of money equal to that paid by DHS for [his] hospital, medical and other similar expenses necessitated by said accident or incident." Nacino also agreed that if he were paid directly any compensation for injuries received in the moped accident, he would reimburse DHS for the amount of medical costs paid on his behalf. Nacino was thus contractually obligated to reimburse DHS for its entire statutory lien.

■ Nacino argues that any such obligation amounts to an unenforceable contract of adhesion because he had no alternative but to accept DHS's terms in order to receive medical assistance benefits. However, Nacino was not forced to apply for medical assistance benefits from DHS. Moreover, he paid nothing in order to receive such benefits. Since his medical assistance benefits were paid for by the federal and state taxpayers, Congress and the legislature clearly had a significant interest in ensuring that the public fisc be reimbursed if Nacino were able to collect damages from a third party for the injuries that led to Nacino's need for medical assistance benefits from DHS.

Third, other jurisdictions with statutory provisions similar to HRS § 346–37, as it existed at the time of this lawsuit, have concluded that a state's entire lien must be satisfied from the proceeds of a settlement. In *Calvanese v. Calvanese*, 93 N.Y.2d 111, 710 N.E.2d 1079, 688 N.Y.S.2d 479, for exam-

---

**13.** The name of the Department of Social Services and Housing was changed in 1987 to the Department of Human Services. Act 339, I 1987 Haw. Sess. Laws 1114, 1115.

ple, the New York Court of Appeals was called upon to decide whether the entire amount of a personal injury settlement was available to satisfy a medicaid lien, or just that portion specifically allocated to past medical expenses. The settlement proceeds in that case had been allocated to the appellant's pain and suffering, then transferred to a supplemental needs trust for the appellants' behalf. In holding that the entire amount should be reimbursed to the state, the court reasoned:

Nowhere in the elaborate statutory scheme governing this area of the law ... is the agency's right of recovery restricted in this manner. A State that has furnished Medicaid acquires the rights of recipients "to payment by any other party for such health care items or services," and must "retain" from the recovery an amount "as is necessary to reimburse it for medical assistance payments made on behalf of an individual" (42 U.S.C. § 1396a[a][25][H]; § 3968k[b] ).

New York's assignment, subrogation and lien provisions effectuate these Federal mandates by imbuing the Department with broad authority to pursue any amount of third party reimbursement to which the appellants are entitled. As a condition of eligibility for Medicaid, all applicants and recipients must "assign to the appropriate social services official or the department * * * *any benefits* which are available to him or her individually from any third party for care or other medical benefits available under this title". Once the Department has furnished Medicaid assistance to an applicant or recipient, it is subrogated to the extent of the expenditures it has made "to *any rights* such person may have to * * * third party reimbursement".

The Department's ability to enforce its right to reimbursement with a lien is correspondingly broad. If any Medicaid recipient has a right of action "on account of any personal injuries suffered by such recipient," the Department has a lien "for such amount as may be fixed by the public welfare official" up to the amount it has expended. Appellants' proposal that courts—or Medicaid recipients acting in conjunction with responsible third parties—be allowed to compromise Medicaid liens by allocating settlements to specific categories of damages is contrary to statutory mandate. Once a Medicaid lien is in effect, only the local public welfare official may release and discharge it, and "no release, payment, discharge or satisfaction of any * * * claim, demand, right of action, suit or counterclaim shall be valid or effective against such lien".

In light of the Department's broad statutory obligation to seek reimbursement from responsible third parties, appellants present no justification for circumscribing the Department's recovery from settlement funds. The allocation of funds in the manner that appellants urge would divert available third-party resources from the Department to a Medicaid recipient's supplemental needs trust. This would weaken the assignment and subrogation provisions as well as the priority assigned to Medicaid liens, results that would jeopardize the ultimate goal of Medicaid—that the program be the payor of last resort. It would also create an anomalous situation in which Medicaid applicants could be disqualified from eligibility for financial resources that include prior personal injury settlements allocated to pain and suffering, but Medicaid recipients could shield such funds from recoupment by the Department after having received significant public assistant.

93 N.Y.2d at 118–19, 710 N.E.2d at 1081–82, 688 N.Y.S.2d at 482–83 (New York statutory and case citations and brackets omitted). *See also Link v. Town of Smithtown,* 267 A.D.2d 284, 700 N.Y.S.2d 52, 53 (1999) (affirming a lower court's determination that "where an adult Medicaid recipient settles a personal injury action brought against a third party * * * a Department of Social Services' lien for medical expenditures may be satisfied in full out of the proceeds of the settlement[,]" not just the portion attributable to past medical expenses); *Norwest Bank North Dakota, N.A. v. Doth,* 969 F.Supp. 532, 535 (D.Minn.1997) (holding that Medicaid recipient who secures a personal injury judgment or settlement from third parties may not evade the state's medical

assistance lien by placing the proceeds into a supplemental needs trust; "a Medicaid recipient is, essentially, an agent of the state for the purpose of reimbursing the Medicaid fund. As such, a Medicaid recipient's payments from a third party do not truly belong to the Medicaid recipient"); *Coplien v. Dep't of Health & Social Services,* 119 Wis.2d 52, 349 N.W.2d 92, 93 (1984) (holding that claimant had to fully reimburse Department for medicaid payments it made to him after he was injured, notwithstanding that his recovery was less than one-fourth his actual damages).

### D. The Cases Construing the Federal Medical Care Recovery Act Are Distinguishable

In support of his argument that DHS's lien should be discounted to mirror his recovery, Nacino relies on several federal cases that interpret the Federal Medical Care Recovery Act (FMCRA), 42 U.S.C.A. § 2651 (Supp. 1998),[14] which contains several provisions similar to HRS § 346-37.[15] These cases concluded that under the FMCRA, which grants the federal government a substantive right to recover from third-party tortfeasors the

14. 42 U.S.C.A. § 2651 (Supp.1998) provides, in relevant part, as follows:

> **Recovery by United States**
> **(a) Conditions; exceptions; persons liable; amount of recovery; subrogation; assignment.** In any case in which the United States is authorized or required by law to furnish or pay for hospital, medical, surgical, or dental care and treatment ... to a person who is injured ... under circumstances creating a tort liability upon some third person ... to pay damages therefor, ... the United States shall have a right to recover (independent of the rights of the injured ... person) from said third person, or that person's insurer, the reasonable value of the care and treatment so furnished, to be furnished, paid for, or to be paid for and shall, as to this right be subrogated to any right or claim that the injured or diseased person, his guardian, personal representative, estate, dependents, or survivors has against such third person to the extent of the reasonable value of the care and treatment so furnished, to be furnished, paid for, or to be paid for.... The head of the department or agency of the United States furnishing such care or treatment may also require the injured or diseased person, his guardian, personal representative, estate, dependents, or survivors, as appropriate, to assign his claim or cause of action against the third person to the extent of that right or claim.
> ....
> **(c)**
> (1) If, pursuant to the laws of a State that are applicable in a case of a member of the uniformed services who is injured ... as a result of tortious conduct of a third person, there is in effect for such a case (as a substitute or alternative for compensation for damages through tort liability) a system of compensation or reimbursement for expenses of hospital, medical, surgical, or dental care and treatment or for lost pay pursuant to a policy of insurance, contract, medical or hospital service agreement, or similar arrangement, the United States shall be deemed to be a third-party beneficiary of

> such a policy, contract, agreement, or arrangement.
> (2) For the purposes of paragraph (1)—
> (A) The expenses incurred or to be incurred by the United States for care and treatment for an injured ... member as described in subsection (a) shall be deemed to have been incurred by the member;
> ....
> (B) The United States shall be subrogated to any right or claim that the injured ... member or the member's guardian, personal representative, estate, dependents, or survivors have under a policy, contract, agreement, or arrangement referred to in paragraph (1) to the extent of the reasonable value of the care and treatment and the total amount of the pay deemed lost under subparagraph (B).
> **(d) Enforcement procedure; intervention; joinder of parties; state or Federal court proceedings.** The United States may, to enforce a right under subsections (a), (b) and (c)[,] (1) intervene or join in any action or proceeding brought by the injured ... person, his guardian, personal representative, estate, dependents, or survivors against the third person who is liable for the injury ... or the insurance carrier or other entity responsible for the payment or reimbursement of medical expenses or lost pay; or (2) if such action or proceeding is not commenced within six months after the first day in which care and treatment is furnished or paid for by the United States in connection with the injury ... involved, institute and prosecute legal proceedings against the third person who is liable for the injury ... or the insurance carrier or other entity responsible for the payment or reimbursement of medical expenses or lost pay, in a State or Federal court, either alone (in its own name or in the name of the injured person, his guardian, personal representative, estate, dependents, or survivors) or in conjunction with the injured ... person, his guardian, personal representative, estate, dependents, or survivors.

15. Compare the first paragraph of HRS § 346-37(c) (Supp.1997) with 42 U.S.C.A. § 2651(c), and HRS § 346-37(j) with 42 U.S.C.A. § 2651(c).

costs of medical services rendered to injured veterans, the federal government is only entitled to its *pro rata* share of the recovery from the third-party tortfeasor. *See e.g., Commercial Union Ins. Co. v. United States,* 999 F.2d 581, 589 (D.C.Cir.1993) (concluding that because "the FMCRA is silent on the question of priority," and interpleader requires the court to apply equity, the insurance proceeds should be distributed "on a ratable basis, such that each claimant receives 'a share of the fund proportionate to their share of the total judgment figure' "); *Cockerham v. Garvin,* 768 F.2d 784, 787 (6th Cir.1985) (holding that under the FMCRA, the government "seeks recovery only as a beneficiary of the [settlement recovery] fund, and therefore, equitable considerations apply"; where the government "passively has allowed the veteran to bear all the risk and costs of pursuing litigation" and the injured veteran "has accepted a discounted settlement for his claims of wage loss, pain and suffering, loss of future earning potential, and the like, it is not equitable to require full reimbursement for services the government was duty-bound to render").

We note, however, that although the FMCRA includes some provisions identical to HRS § 346–37, there is no FMCRA provision similar to HRS § 346–37(e) that grants to the federal government "a lien in the amount of the costs of medical assistance . . . made against the proceeds from special damages awarded in a suit or settlement" to the veteran. Furthermore, the FMCRA does not contain the following provision found in HRS § 346–37(e):

> If a notice of lien is properly served upon the third person under subsection (c), the third person's agent or attorney, or upon the third person's insurance company, as provided in subsection (f), it shall be the responsibility of the third person to satisfy the lien prior to disbursing any of the proceeds to the third person to satisfy the lien prior to disbursing any of the proceeds to the claimant's attorney.

Unlike the FMCRA, the clear and unambiguous language of HRS § 346–37, when construed as a whole and in conjunction with 42 U.S.C. § 1396 et. seq., establishes a priority that the medical assistance lien be paid to DHS before the recipient of the medical assistance is reimbursed. Accordingly, the circuit court erred when it reduced the amount of DHS's statutory lien.

Accordingly, we vacate that portion of the Final Judgment of the circuit court that concluded that DHS shall be reimbursed the sum of $21,213.33 for "Medicaid costs" paid by DHS on Nacino's behalf. We remand this case for entry of an amended final judgment that provides that DHS shall be entitled to reimbursement of its entire lien amount from the proceeds of the settlement between Nacino and the City.