EDWARD J. PAYNE, BY HIS GUARDIAN AD LITEM, S. MARK RABIL, AND WAVIE MAE PAYNE, PLAINTIFFS V. STATE OF NORTH CAROLINA, DEPARTMENT OF HUMAN RESOURCES, DIVISION OF MEDICAL ASSISTANCE, INTERVENOR-PLAINTIFF V. REEVES COMMUNITY CENTER OF MOUNT AIRY, INC., A NON-PROFIT CORPORATION, DEFENDANT

No. COA96-745

(Filed 1 July 1997)

## Social Services and Public Welfare § 27 (NCI4th)— Medicaid—special needs trust—subrogation lien—not barred

The trial court correctly held that the Division of Medical Assistance (DMA) of the North Carolina Department of Human Resources was entitled to recover in full its lien where plaintiff suffered a severe permanent injury to his spinal cord when diving into a swimming pool; plaintiff resided and continues to reside with his mother, who had applied for and received Medicaid prior to the accident; all of the medical bills were paid by Medicaid; DMA imposed a statutory subrogation lien in the amount of $138,198.53; plaintiff's counsel informed DMA that plaintiff was going to settle with the owner of the pool for $1 million and that the entire recovery would be allocated to the minor, later allocat-

ing $45,000 to the guardian-mother for medical expenses and loss of services, with DMA to be entitled to $15,000; the trial court ordered the creation of the trust with the full amount of the lien placed in escrow; and the court subsequently concluded that DMA was entitled to receive payment in full of its lien. The federal government requires the State to take measures to determine the legal liability of third parties and to seek reimbursement from them; however, State law controls how Medicaid liens will operate. N.C.G.S. § 108A-57 (1994) provides that the United States and the State of North Carolina shall be entitled to shares in each recovery and, pursuant to N.C.G.S. § 108A-59(a) (1994), individual Medicaid applicants assign all their rights to recovery against third-party tortfeasors to the State. In drafting N.C.G.S. § 108A-57 (1994), the Legislature did not specifically address the interplay between DMA's right to recoup its Medicaid lien and the establishment of special needs trusts. By accepting Medicaid benefits, plaintiff assigned his right to third party benefits to DMA and DMA's lien vested at that time. The establishment of the special needs trust did not bar DMA's right to enforce its lien in an amount not to exceed one-third of the total recovery.

**Am Jur 2d, Welfare Laws §§ 38 et seq., 91 et seq.**

Appeal by plaintiffs from order entered 3 January 1996 by Judge Julius A. Rousseau, Jr., in Forsyth County Superior Court. Heard in the Court of Appeals 25 February 1997.

*Attorney General Michael F. Easley, by Special Deputy Attorney General Robert J. Blum and Assistant Attorney General Elizabeth L. Oxley, for the State, intervenor-plaintiff appellee.*

*Jessup & Probst, by Debra Ragin Jessup, for plaintiff appellants.*

COZORT, Judge.

Plaintiff settled a personal injury action with defendant pool owner for $1 million. At the time of settlement, intervenor North Carolina Department of Human Resources, Division of Medical Assistance, had paid over $138,000.00, through the Medicaid program, for plaintiff's medical expenses. The Department imposed a lien on the settlement proceeds for the full amount of medical expenses, while plaintiff's attorney proposed paying the Department $15,000.00 to satisfy the lien. The trial court held that the

Department was entitled to the entire amount of its lien, over $138,000.00. We affirm.

On 24 June 1994, plaintiff Edward Junior Payne (Edward) suffered a severe and permanent injury to his spinal cord, when he dived into a swimming pool where the depth of the water was only three feet. Edward struck his head on the bottom of the pool thereby severely injuring his spinal cord and leaving him a quadriplegic, with limited use of his body from the shoulders down. At the time of the accident, Edward resided and continues to reside with his mother, plaintiff Wavie Mae Payne (Mrs. Payne). Mrs. Payne applied for and received Medicaid prior to the accident. All of Edward's medical bills were paid by Medicaid.

On 9 October 1995, the State of North Carolina, Department of Human Resources, Division of Medical Assistance (DMA) imposed a statutory subrogation lien in the amount of $138,198.53 on any recovery made by plaintiff against a third party. In a letter dated 3 November 1995, plaintiff's counsel informed DMA that plaintiff was going to settle a lawsuit against defendant Reeves Community Center, the owner of the pool, for $1 million, and that the entire recovery would be allocated to the minor, to be placed in a trust. On 16 November 1995, plaintiff's counsel informed DMA that plaintiff had changed his position and had allocated $45,000.00 to the guardian-mother to cover medical expenses and loss of services, and that DMA was entitled to one-third of that amount, or $15,000.00. DMA filed a motion to intervene, which was granted on 20 November 1995. On 22 November 1995, plaintiff entered into a settlement and release agreement with defendant. An irrevocable trust, known as a special needs trust (the trust) was established for Edward. The trust allows him to continue to receive Medicaid benefits, despite trust assets. See 42 U.S.C.A. § 1396(p)(d)(4); N.C. Gen. Stat. § 108A-56 (1994); N.C. Gen. Stat. § 35A-1251(23) (1995).

DMA was not a party to the settlement agreement or the creation of the trust. DMA agreed, by letter dated 22 November 1995, that the full amount of its lien should be placed in escrow with the Forsyth County Clerk of Court, pending the outcome of the dispute between the parties regarding distribution of the lien. The issue before the trial court was whether DMA was limited in its recovery to one-third of the amount allocated to Mrs. Payne ($15,000.00), or whether it could recover the full amount of its lien, $138,198.53.

In a consent judgment filed 22 November 1995, the trial court ordered the creation of the trust. The court approved the payment of attorneys' fees as set forth in the settlement agreement and ordered that the entire lien amount, $138,198.53, be placed into escrow. In an order filed 3 January 1996, the trial court concluded as a matter of law that DMA is entitled to receive $138,198.53 as payment in full of its lien pursuant to N.C. Gen. Stat. § 108A-57 (1994). From this order plaintiffs appeal.

Plaintiffs argue that, pursuant to N.C. Gen. Stat. § 108A-57 DMA is not entitled to recover the full amount of its lien from settlement proceeds for medical expenses paid on behalf of plaintiff Edward Payne. We disagree.

Medicaid is a cooperative federal-state program through which medical assistance benefits are provided to needy disabled persons meeting certain criteria. *Correll v. Division of Social Services*, 332 N.C. 141, 143, 418 S.E.2d 232, 234 (1991). North Carolina agencies making disability benefit determinations are required to comply with federal Medicaid statutes and regulations. N.C. Gen. Stat. § 108A-56; 42 U.S.C.A. § 1396a (West 1996 Cum. Supp.); *see Lackey v. Dep't of Human Resources*, 54 N.C. App. 57, 64, 283 S.E.2d 377, 381 (1981), *decision modified*, 306 N.C. 231, 293 S.E.2d 171 (1982); *Lowe v. North Carolina Dep't of Human Resources*, 72 N.C. App. 44, 45, 323 S.E.2d 454, 456 (1984). Federal law and regulations require the State to collect money from third party tortfeasors liable to Medicaid beneficiaries. 42 U.S.C.A. § 1396a(a)(25) provides:

A State plan for medical assistance must provide—

\* \* \* \*

(A) that the State or local agency administering such plan will take all reasonable measures to ascertain the legal liability of third parties (including health insurers) to pay for care and services available under the plan, including—

\* \* \* \*

(B) that in any case where such a legal liability is found to exist after medical assistance has been made available on behalf of the individual and where the amount of reimbursement the State can reasonably expect to recover exceeds the costs of such recovery, the State or local agency will seek reimbursement for such assistance to the extent of such legal liability; . . .

Thus, the federal government requires the State to take measures to determine the legal liability of third parties and to seek reimbursement from them. State law, however, controls how Medicaid liens will operate. In North Carolina, pursuant to N.C. Gen. Stat. § 108A-59(a) (1994), individual Medicaid applicants assign all their rights to recovery against third-party tortfeasors to the State. *N.C. Dept. of Human Resources v. Weaver,* 121 N.C. App. 517, 519, 466 S.E.2d 717, 718-19, *disc. review denied,* 342 N.C. 896, 467 S.E.2d 905 (1996). N.C. Gen. Stat. § 108A-59(a) provides:

> Notwithstanding any other provisions of the law, *by accepting medical assistance, the recipient shall be deemed to have made an assignment to the State of the right to third party benefits, contractual or otherwise to which he may be entitled.*
>
> It shall be the responsibility of the county attorney of the county from which the medical assistance benefits are received or an attorney retained by that county and/or the State to enforce this subsection, and said attorney shall be compensated for his services in accordance with the attorneys' fee arrangements approved by the Department of Human Resources.

*Id.* (1994 and Cum. Supp. 1996) (emphasis added.)

At the time the present dispute arose, N.C. Gen. Stat. § 108A-57 (1994) (statute amended in 1996 Cum. Supp. but does not affect our case) provided:

> (a) Notwithstanding any other provisions of the law, to the extent of payments under this Part, the State, or the county providing medical assistance benefits, shall be subrogated to all rights of recovery, contractual or otherwise, of the beneficiary of such assistance, or of his personal representative, his heirs, or the administrator or executor of his estate, against any person. It shall be the responsibility of the county attorney or an attorney retained by the county and/or the State or an attorney retained by the beneficiary of the assistance if such attorney has actual notice of payments made under this Part to enforce this section, and said attorney shall be compensated for his services in accordance with the attorneys' fee arrangements approved by the Department; provided, however, that any attorney retained by the beneficiary of the assistance shall be compensated for his services in accordance with the following schedule and in the following order of priority from any amount obtained on behalf of

the beneficiary by settlement with, judgment against, or otherwise from a third party by reason of such injury or death:

\* \* \* \*

The United States and the State of North Carolina shall be entitled to shares in each net recovery under this section. Their shares shall be promptly paid under this section and their proportionate parts of such sum shall be determined in accordance with the matching formulas in use during the period for which assistance was paid to the recipient.

Plaintiff argues that 42 U.S.C.A. § 1396p(a)(1) (West 1996 Cum. Supp.) bars DMA from enforcing its Medicaid lien. Section 1396p(a)(1), which governs the creation of the disability trust, provides, "[n]o lien may be imposed against the property of any individual prior to his death on account of medical assistance paid or to be paid on his behalf under the State plan . . . ." In drafting N.C. Gen. Stat. § 108A-57, our Legislature did not specifically address the interplay between DMA's right to recoup its Medicaid lien and the establishment of special needs trusts. Each State must determine whether the Medicaid lien must be paid before or after the creation of a disability trust. *See* Susan G. Haines, *Beware the Jabberwock: Coordination of Benefits in the Context of Workers' Compensation and Personal Injury Liability Settlements*, Trial Talk, January 1995, at 9-10. We hold that, by accepting Medicaid benefits, plaintiff Edward Payne assigned his right to third-party benefits to DMA, and we further hold DMA's lien vested at that time. The establishment of the special needs trust in this case does not bar DMA's right to enforce its lien in an amount not to exceed one-third of Edward's total recovery.

The trial court correctly held that DMA is entitled to recover $138,198.53 as payment in full of its lien. The order of the trial court is

Affirmed.

Judges EAGLES and JOHN concur.