MARJORIE PARKHURST, CONSERVATRIX (ESTATE OF MATTHEW SQUINOBAL) *v.* PATRICIA A. WILSON-COKER, COMMISSIONER OF SOCIAL SERVICES
(AC 24117)

Lavery, C. J., and DiPentima and Peters, Js.

Argued February 25—officially released May 11, 2004

*Matthew J. LeFevre*, for the appellant (plaintiff).

*Eileen Meskill*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney

general, and *Robert J. Lynch*, assistant attorney general, for the appellee (defendant).

*Opinion*

PETERS, J. Special needs trusts are trusts designed to supplement the benefits that persons with a disability are entitled to receive under various federal and state statutes. Congress has decided that the assets in a special needs trust do not affect a needy person's eligibility for supplemental security income under the federal Social Security Act. See 42 U.S.C. §§ 1382b (c) (1) (C) (ii) (IV) and (e) (5), and 1396p (d) (4) (A). The principal issue in this case, a question of first impression, is whether our legislature, in enacting General Statutes § 17b-600, which establishes an optional state funded program of supplemental income assistance, intended our program to follow the federal model with respect to special needs trusts.

Section 17b-600 requires the department of social services (department) to adopt regulations "consistent with the requirements of Title XVI of the Social Security Act pertaining to programs of optional state supplementation . . . ." General Statutes § 17b-600.[1] We must decide whether this provision forbids the department

---

[1] General Statutes § 17b-600 provides in relevant part: "The Commissioner of Social Services shall administer a program of optional state supplementation as provided for by Title XVI of the Social Security Act, as amended, and shall administer the program in accordance with the requirements provided therein. In accordance with the requirements of Title XVI of said Social Security Act, optional state supplementation may be provided to . . . disabled individuals who receive supplemental security income benefits . . . . Any disposition shall be presumed to have been made for the purpose of establishing eligibility for benefits or assistance unless the individual furnishes convincing evidence to establish that the transaction was exclusively for some other purpose . . . . The program of optional state supplementation shall be administered in accordance with regulations to be adopted by the Department of Social Services, which regulations shall be consistent with the requirements of Title XVI of the Social Security Act pertaining to programs of optional state supplementation. . . ."

from departing from federal law by counting the assets in a special needs trust in determining eligibility for our state funded program. The trial court concluded that our stricter state eligibility requirements are enforceable. We agree and affirm its judgment.[2]

The plaintiff, Marjorie Parkhurst, is the conservatrix for her son, Matthew John Squinobal, who is disabled because of mental retardation. The plaintiff is also the trustee of a special needs trust for the benefit of her son. The defendant is the commissioner of social services (commissioner).

The plaintiff appealed to the trial court from a decision by a hearing officer of the department that the establishment of a special needs trust made her son ineligible to continue receiving state supplemental income assistance for a significant number of years. The commissioner defended the validity of the regulations promulgated by the department that impliedly authorized discontinuation of state benefits under these circumstances.

The trial court dismissed the plaintiff's administrative appeal. It concluded that the department properly had interpreted the applicable federal and state statutes and regulations to limit her son's eligibility for state supplemental income benefits in light of the funds in the special needs trust. It further concluded that a delay in the issuance of a decision by the department's hearing officer did not require approval of the plaintiff's petition for reinstatement of benefits. We agree.

In the plaintiff's appeal from this adverse judgment, she raises three issues. She maintains that the trial court improperly (1) interpreted § 17b-600 to authorize state

---

[2] General Statutes § 17b-91 has a similar requirement of consistency with federal law. Although the parties have noted the existence of this section, they have not argued that § 17b-91 requires a different result than does § 17b-600. We therefore will not undertake an analysis of this statute.

supplemental assistance eligibility rules that conflict with federal supplemental security income eligibility rules, (2) applied § 17b-600 and § 3025.05 of the department's Uniform Policy Manual to hold that the creation of a special needs trust by means of a transfer of funds owned by her son affected his continued eligibility for state supplemental income assistance and (3) upheld a decision by a hearing officer despite noncompliance with statutory and regulatory time limits. Because each of these issues raises a question of law, we have plenary authority to review the merits of the judgment of the trial court. See *Del Core* v. *Mohican Historic Housing Associates*, 81 Conn. App. 120, 121–22, 837 A.2d 902 (2004).

I

## ELIGIBILITY REQUIREMENTS

In her principal argument on appeal, the plaintiff disputes the validity of the department's interpretation and application of the state statute and regulations that govern optional state funded supplemental assistance for disabled persons like her son. She maintains that the establishment of a special needs trust on her son's behalf was irrelevant to his right to continue to receive financial assistance from the department. In her view, § 17b-600, which provides in relevant part that this state program "shall be consistent with the requirements of Title XVI of the Social Security Act pertaining to programs of optional state supplementation," makes it mandatory for the department to follow comparable federal law in every respect. Federal law disregards special needs funds in the calculation of federal benefits. Like the trial court, we disagree with the plaintiff.

A

### The Facts of this Case

The facts underlying the present controversy are undisputed. Since 1997, the plaintiff's disabled son has

received both federal supplemental security income benefits and optional state funded supplemental assistance benefits.[3] Together, these two income streams permit him to live in a residential group home.

In 1998, an automobile accident caused the son to suffer severe injuries. As a result, the son received $115,377.56 in settlement proceeds. In 2001, with the approval of the Torrington Probate Court, these settlement proceeds were placed into the Matthew John Squinobal Trust Indenture (trust indenture), and the plaintiff was named the trustee of the trust.

The trust is irrevocable. During the son's lifetime, he is its sole beneficiary. The trust expresses the intent that its funds not displace federal, state or private entitlement or assistance programs.

The trust indenture confers on the plaintiff, as trustee, unlimited discretion to ascertain the special needs of her son and then to use or not use the income or the principal for him in his best interests. That discretion might be, but need not be, exercised to provide additional support, such as therapy sessions, to help her son cope with his disability. It equally well might be exercised to enhance the quality of his life by paying for expensive vacations and entertainment.

We do not mean to suggest that this plaintiff would behave irresponsibly, or, indeed, that a Probate Court knowingly would approve the appointment of an irresponsible person as trustee. Although other trusts often confer similar unlimited discretion on trustees, we are persuaded that trusts that affect the public exchequer warrant particular scrutiny. If the trust fund in this case is enforceable on its own terms, the state will have to continue to support the son financially throughout his lifetime. The enforceability of a special needs trust can-

---

[3] The record does not disclose whether he received other benefits as well.

not, as a practical matter, depend on a case-by-case analysis of the extent to which any particular trustee would likely exercise trust discretion properly.

One other aspect of the trust indenture is noteworthy. Even after the son's death, the state will have no access to any remaining unspent funds in the trust to recoup optional state funded supplemental assistance payments. As federal law permits, the trust provides that, at that time, the trust must reimburse only unrepaid *medical* assistance benefits. See 42 U.S.C. § 1396p (d) (4) (A); Department of Social Services, Uniform Policy Manual § 4030.80D (6) (Uniform Policy Manual). Any remaining trust funds will be payable "to any one or more individuals or charities" other than the son, his estate or his creditors, in such proportions and amounts, as the son "may appoint by Will" or, in the absence of such appointment, to the son's "then living heirs-at-law."[4] Indeed, § 2.1 (1) of the trust indenture expresses the settlor's intent that, except for medicaid benefits, the trust funds were never to be used for repayment of state benefits received in the past or to be received in the future.

Acting on concerns raised by the establishment of the special needs trust that is at issue in this case, the department notified the plaintiff that as a result of the transfer of the settlement proceeds into the trust, it would discontinue optional state funded supplemental assistance payments for her son as of June 30, 2001. In light of the value of the transferred assets, the department maintained that the son would be ineligible to receive such benefits for a period of 19.23 years.[5]

---

[4] The plaintiff alluded, in passing, to this part of the trust indenture in her discussion of the second issue on appeal. Neither party has discussed the relevance of this part of the trust indenture to the issue of continued eligibility for state funding.

[5] The plaintiff has not challenged the length of time that her son would be disqualified from state supplemental income assistance if we affirm the department's interpretation of the governing statutes and regulations.

On September 28, 2001, the department held a hearing to consider the plaintiff's objection to the cessation of her son's state benefits. In a decision dated March 8, 2002, a departmental hearing officer upheld the department's decision. The trial court, on April 2, 2003, dismissed the plaintiff's appeal from the decision of the departmental hearing officer. This appeal followed.[6]

### B

### Federal Regulation of Special Needs Trusts

To ascertain the legislature's intent in requiring the state supplemental income assistance benefits program to be "consistent with" Title XVI of the federal Social Security Act, we follow established principles of statutory interpretation. "The process of statutory interpretation involves a reasoned search for the intention of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. In seeking to determine that meaning, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Citation omitted; internal quotation marks omitted.) *State* v. *Courchesne*, 262 Conn. 537, 577, 816 A.2d 562 (2003).[7] Because interpretation of this statute

---

[6] Although the son's benefits were reinstated on July 1, 2001, pending a decision of the departmental hearing officer, they were discontinued after the hearing officer's issuance of that decision.

[7] The relevant statutory text and the relationship of that text to other statutes and regulations is not plain and unambiguous. We, therefore, need not consider the effect of Public Acts 2003, No. 03-154, § 1. See *Jones* v. *Kramer*, 267 Conn. 336, 344 n.4, 838 A.2d 170 (2004).

Although the plaintiff has provided us with excerpts from the relevant legislative discussions of the bill that later became General Statutes § 17b-600, those excerpts do no more than underscore the legislature's interest in consistency between federal and state law on supplemental income assis-

raises a novel question of law, it would be inappropriate for us to defer to the department's view of the intent of the legislature. See *MacDermid, Inc.* v. *Dept. of Environmental Protection*, 257 Conn. 128, 137, 778 A.2d 7 (2001); *Charette* v. *Waterbury*, 80 Conn. App. 232, 243–44, 834 A.2d 759 (2003), cert. denied, 267 Conn. 910, 840 A.2d 1172 (2004).

Special needs trusts first received special treatment by Congress under the medicaid program, which provides medical care to needy persons. See Title XIX of the Social Security Act, 42 U.S.C. § 1396 et seq.; *Ramey* v. *Reinertson*, 268 F.3d 955, 957–58 (10th Cir. 2001). Since 1993, Congress has excluded assets in special needs trusts from the calculation of eligibility for medicaid benefits.[8] 42 U.S.C. § 1396p (d) (4) (A).

Congressional exclusion of special needs trust assets from eligibility for medicaid benefits is, however, subject to two important limitations. First, the special needs trust indenture must provide that the state will be reimbursed for its medicaid expenditures upon the death of the beneficiary of the trust.[9] Second, the special needs trust may not be funded with assets that are subject to a prior state lien. Pursuant to 42 U.S.C. § 1396k, medicaid recipients must assign to the state any rights the recipients may have to payment of medi-

---

tance. The legislators did not purport to define what they meant by requiring our program to be "consistent with [federal] requirements . . . pertaining to programs of optional state supplementation. . . ." General Statutes § 17b-600.

[8] See Medicare and Medicaid Budget Reconciliation: Hearings on H.R. 2264 Before the Subcommittee on Health and the Environment of the Committee on Energy and Commerce, 103d Cong., 1st Sess. 333–47 (1993); see also 2 Restatement (Third), Trusts § 50, comment (e) (4), p. 314 (2003) (legislative intent of 1993 legislation was to protect community of disabled persons).

[9] It may be unlikely that any assets will remain in a special needs trust for repayment of medicaid benefits. As this case illustrates, however, accidents can happen at any time.

cal care from third parties. A state may enforce a medic-
aid lien on settlement funds paid by a third party
tortfeasor to a medicaid recipient. See, e.g., *Cricchio*
v. *Pennisi*, 90 N.Y.2d 296, 309, 683 N.E.2d 301, 660
N.Y.S.2d 679 (1997).[10]

In 1999, Congress extended the eligibility conse-
quences of special needs trusts under medicaid to the
federal supplemental security income program. See 42
U.S.C. §§ 1382b (c) (1) (C) (ii) (IV) and (e) (5). The
supplemental security income program, first enacted
in 1972, as Title XVI of the Social Security Act, 42 U.S.C.
§ 1381 et. seq., was designed "to afford cash assistance
for basic necessities (but not medical expenses) to dis-
abled persons who met the resource eligibility require-
ments." *Ramey* v. *Reinertson*, supra, 268 F.3d 958.
Notably, Congress did not require special needs trusts
designed to supplement such cash assistance *ever* to
reimburse the state, even after the death of the trust's
beneficiary, for anything other than the *medical* bene-
fits that the state had provided. The parties have not
cited, and we have not found, any explanation of why
Congress authorized special needs trusts that give free
rein to the beneficiary or, practically speaking, his con-
servatrix to enrich personal friends at the expense of
the taxpayers who fund social services programs.

It is clear, however, that the funding to which the
plaintiff's son is entitled under the *federal* supplemental
security income program is unaffected by the establish-
ment of the special needs trust in this case. The terms
of the special needs trust indenture comply fully with

---

[10] See also *Nacino* v. *Chandler*, 101 Haw. 473, 486, 71 P.3d 424 (Haw. App.
2002), aff'd, 101 Haw. 466, 71 P.3d 417 (2003); *Roberts* v. *Total Health Care.*,
*Inc.*, 349 Md. 499, 512–13, 709 A.2d 142 (1998); *Calvanese* v. *Calvanese*, 93
N.Y.2d 111, 121, 710 N.E.2d 1079, 688 N.Y.S.2d 479, cert. denied sub nom.
*Callahan* v. *Suffolk County Dept. of Social Services*, 528 U.S. 928, 120 S.
Ct. 323, 145 L. Ed. 2d 252 (1999); *Payne* v. *State*, 126 N.C. App. 672, 677,
486 S.E.2d 469, review denied, 347 N.C. 269, 493 S.E.2d 656 (1997).

the requirements of federal law. As far as the record shows, the state has not pursued its right to a statutory lien over the settlement proceeds for any purpose.[11]

## C

### State Regulation of Special Needs Trusts

Connecticut law follows the federal model with respect to the effect of special needs funds on Medicaid eligibility. Uniform Policy Manual, §§ 3028.11D (1) and 4030.80D (6). The department, however, has taken a contrary position with respect to eligibility for optional state funded supplemental assistance.

The department has not expressed its position directly in any provision in its Uniform Policy Manual. Section 3025 of the Uniform Policy Manual does not, in so many words, exclude the assets in a special needs trust from the calculation of eligibility for optional state funded supplemental assistance. Our legislature, however, in enacting § 17b-600, has authorized the department to administer the supplemental assistance program "in accordance with the regulations and departmental policy manual provisions applicable to the aid to the elderly, aid to the blind and aid to the disabled programs . . . ." General Statutes § 17b-600. The statute omits any cross-reference to regulation of the state medicaid program. We conclude that the statute dispels any implication that medicaid eligibility rules apply to this program. The plaintiff has not seriously argued to the contrary.

## D

### Consistency with Federal Law

Section 17b-600 requires state law to be "consistent with the requirements of Title XVI of the Social Security

---

[11] General Statutes §§ 17b-93 and 17b-94 give the state a statutory lien on the proceeds of causes of action by the beneficiaries of aid under the state supplemental program. There is no indication in the record that, in this case, the state ever tried to enforce its statutory lien. If enforceable, its lien

Act pertaining to programs of optional state supplementation . . . ." General Statutes § 17b-600. We turn now to an examination of the meaning of this cross-reference.

It is important to note, at the outset, that the statute does not require our state program to match the *benefits* that are available to the plaintiff's son under federal law. It is, therefore, not sufficient for the plaintiff to establish that, as a matter of federal law, a special needs trust does not affect her son's eligibility for federal supplemental income.

The issue before us is to determine what our legislature intended when it required state consistency "with the requirements of Title XVI of the Social Security Act *pertaining to programs of optional state supplementation. . . .*" (Emphasis added.) General Statutes § 17b-600. The commissioner argues that a benefits program that is optional, state funded and state administered may establish its own eligibility criteria for state assistance. The plaintiff maintains, to the contrary, that a state has the authority to do so only if federal regulations expressly permit deviation from federal eligibility requirements. The trial court agreed with the department and so do we.

As the court observed, "[f]ederal statutes or regulations contain little guidance pertaining to eligibility requirements for state supplemental assistance programs." Nonetheless, we have no better reference point for determining what our legislature intended when it required consistency between state and federal law.

Federal law envisages three possible relationships between federal and state supplemental income assistance programs. First, the federal government may

would have taken priority over the subsequent transfer of the settlement funds into the special needs trust.

enter into an agreement with the state to have the federal government administer state as well as federal benefits. 20 C.F.R. § 416.2005 (a) and (b). In that case, federal law governs eligibility for both programs. 20 C.F.R. § 416.110 (f). Second, the federal government may enter into a hybrid agreement with the state, under which the federal government administers federal benefits and the state administers supplemental state benefits. In that case, federal law governs federal eligibility and state law governs state eligibility. 20 C.F.R. § 416.2005 (c). Third, without any agreement with the federal government, the state may administer federal and state supplemental income benefits itself. The federal regulations do not specify the eligibility requirements that apply to optional state funded benefits that are entirely state administered.

The parties draw disparate inferences from this gap in the federal regulations. The department infers from regulatory silence that federal law permits the state to establish its own eligibility requirements for optional state funded supplemental assistance. The plaintiff maintains, to the contrary, that only a federal regulation that expressly authorizes the state to enforce its own eligibility rules for state administered programs would permit the state to depart from federal rules for supplemental assistance. We agree with the department. It seems to us illogical that Congress would have intended greater constraints on state eligibility rules for programs that are entirely state administered than for those that are only partially state administered.

The plaintiff offers two rejoinders to this analysis. Neither is persuasive.

First, the plaintiff reminds us that state supplemental income assistance benefits must comply with federal law as a condition of exclusion of these payments from income as that term is defined for the purpose of federal

benefits. See 42 U.S.C. § 1382e (a). This argument simply restates the question of what kind of compliance the federal law requires.

Second, the plaintiff deems it significant that the department recently has conformed the regulations governing state supplemental benefits with federal law with respect to payments made to hemophilia patients who contracted the human immunodeficiency virus from blood transfusions. Federal law now excludes such payments from the calculation of eligibility for federal social security benefits.[12] The department has amended its Uniform Policy Manual to provide a similar exclusion for the recipients of state medicaid and supplemental income benefits.

According to the plaintiff, the department's decision to follow federal law in this respect demonstrates that the department has always been required to follow federal law in every respect. We are not persuaded. If it proves anything, the department's decision demonstrates the opposite. If the state was already obligated to follow all federal eligibility requirements, it would have been unnecessary to amend departmental regulations in this one instance. Rather, the state's control over eligibility requirements for state funded supplemental assistance authorizes the department to provide exemptions that it deems to be in the public interest of the residents of this state.[13]

We conclude, therefore, that the trial court properly determined that the special needs trust established by the plaintiff for the benefit of her son is an asset that the department could take into account in determining the son's eligibility for state supplemental assistance

---

[12] See the "Ricky Ray Hemophilia Relief Fund Act of 1998," Pub. L. No. 105-369, 112 Stat. 3368, which appears, as amended, in 42 U.S.C. § 300c-22.

[13] The plaintiff has not raised an equal protection argument under either the federal or the state constitutions.

benefits. Federal law permits an optional state funded and state administered benefits program to adopt eligibility criteria that are more stringent than those that govern the parallel federal program. Accordingly, the department's eligibility rules are "consistent" with federal law, as § 17b-600 requires.

II

TRANSFER

Having determined that the eligibility of the plaintiff's son for continued optional state funded supplemental assistance is a matter of state law, we turn now to the statutory and regulatory rules that govern the transfer of property by the recipient of such assistance. The plaintiff maintains that the transfer to the special needs trust of the proceeds of the settlement with the third party tortfeasor was not the kind of transfer that impairs her son's continued eligibility for state supplemental assistance benefits.

Under General Statutes § 17b-600 and § 3025.05 of the Uniform Policy Manual, any transfer of assets by a recipient of state supplemental assistance will affect his or her continued eligibility for state funded benefits unless the transfer satisfies specified conditions. In the absence of evidence that the transaction was "exclusively for some other purpose," our law presumes that such a transfer was "made for the purpose of establishing [or continuing] eligibility for benefits or assistance . . . ." General Statutes § 17b-600. To prevail in this case, the plaintiff bore the burden of rebutting this presumption. The trial court concluded that she had not done so. We agree.

The plaintiff makes a two part argument in support of her claim that the transfer of the settlement proceeds to the special needs trust was made for a legitimate purpose. She maintains that (1) the transfer of the pro-

ceeds to the special needs trust was not a prohibited transfer because the trust was established for her son's benefit and (2) the funding of the trust complied with the criteria that Uniform Policy Manual § 3025.10 identifies as sufficient to rebut a presumption of impropriety.[14] We are not persuaded.

Preliminarily, the plaintiff relies on *Dept. of Social Services* v. *Saunders*, 247 Conn. 686, 705, 724 A.2d 1093 (1999), for the proposition that the establishment of a special needs trust for a close family member is not a transfer at all. That case involved the interpretation of two statutes that authorize probate courts to create and to fund special needs trusts with settlement proceeds. See General Statutes §§ 45a-655 (e) and 45a-151. Like the trial court, we are persuaded that *Saunders* has no bearing on the effect that special needs trusts have on continued eligibility for supplemental income assistance under § 17b-600.

Alternatively, the plaintiff maintains that she has met the evidentiary criteria that § 3025.10 of the Uniform Policy Manual has established as sufficient to validate her son's continued eligibility for state supplemental income assistance. The regulation requires a transferee to establish that (1) the transferor received fair market value, (2) the transfer was for a purpose other than retaining eligibility for state support and (3) the transferor retained sufficient funds for his foreseeable needs. Uniform Policy Manual, supra, § 3025.10. We agree with the department that the plaintiff failed to establish that the special needs trust complied, in any respect, with the requirements of § 3025.10.

---

[14] The plaintiff has not pursued, on appeal, a claim that she made at trial, namely, that in accordance with § 3025.05B of the Uniform Policy Manual, the continuation of her son's state supplemental assistance benefits is required because "(1) ineligibility would cause undue hardship; or (2) the transferor at the time of the transfer was: (a) incompetent; or (b) unduly influenced into making the transfer." Uniform Policy Manual, supra, § 3025B.

The plaintiff asks us to overturn the trial court's factual findings that she failed to present evidence that would establish the legitimacy of the transfer in this case. We overturn a trial court's factual findings only if these findings are clearly erroneous. See *Giametti* v. *Inspections, Inc.*, 76 Conn. App. 352, 356, 824 A.2d 1 (2003).

We uphold each of the findings that the trial court made in concluding that the plaintiff had not established the propriety of the transfer of funds to the special needs trust. The trial court reasonably could find that the special needs trust (1) did not give fair market value in exchange for the settlement proceeds, because the son's receipt of benefits therefrom was entirely discretionary, (2) was intended to affect eligibility for state benefits because the trust indenture candidly so states[15] and (3) did not leave the son with sufficient funds for his needs because he currently seeks reinstatement of his supplemental assistance benefits. Indeed, on the present record, it is hard to see how the court could have made different findings.

We conclude, therefore, as did the trial court, that the use of settlement funds from a third party tortfeasor to establish a special needs trust for the plaintiff's son was a transfer that made the son ineligible for continued state supplemental assistance benefits. It is entirely appropriate for this state to create a presumption that a beneficiary of state aid must use his own resources, whenever and wherever received, as an offset to state funding of benefits to which he would otherwise be entitled. Because this presumption is not always applicable, our law defines the facts that must be established to legitimize a transfer of assets by a person receiving

[15] Section 2.1 (1) of the trust indenture states that the settlor intended to provide a trust fund for the son's benefit that would preserve his continued eligibility "for any and all state, federal and/or private entitlement or assistance programs which may be available to him from time to time."

state supplemental assistance benefits. In this case, the plaintiff did not make the requisite factual showing. We agree with the trial court that, under such circumstances, the commissioner properly decided to suspend the son's eligibility for income assistance.

## III

## DELAY

Even if the plaintiff cannot prevail on the substantive merits of her appeal from the discontinuation of supplemental income benefits for her son, she maintains that, for procedural reasons, her son is entitled to the reinstatement of his benefits. She points to a number of procedural defects in the department's adjudication of her administrative appeal.[16] Like the trial court, we are persuaded that these administrative missteps do not afford her a right to the relief that she seeks.

The plaintiff makes three claims. In her view, she is entitled to a ruling reinstating her son's supplemental income benefits because (1) the hearing officer failed to schedule a hearing within the thirty day period established by General Statutes § 17b-60, (2) the hearing officer failed to issue her decision within the sixty day time period established by General Statutes § 17b-61 (a) and (3) the department failed to provide formal notification to the plaintiff of the proposed discontinuation of her son's benefits, as Uniform Policy Manual §§ 3025.30A and P-3025.25 require.

The department does not dispute the plaintiff's factual assertions. It does, however, dispute the significance of the defaults of which the plaintiff complains. It notes that neither she nor her son was prejudiced by departmental delay because the son continued to receive benefits until the hearing officer denied the plaintiff's appeal. Furthermore, the plaintiff not only

---

[16] We note that she has not requested a new hearing.

did not object to the delay in the hearing but also agreed to a continuance. Finally, the plaintiff has not alleged that the departmental delays adversely affected her ability to make a full presentation on behalf of her son.

The plaintiff nonetheless argues here, as she did at trial, that § 17b-60 makes it mandatory for a hearing officer to hold a hearing in a contested case within thirty days of the department's receipt of a request for a hearing. In this case, the request was filed on June 25, 2001, and the hearing was not held until September 28, 2001. In the plaintiff's view, this delay (1) deprived the hearing officer of subject matter jurisdiction to hear her appeal and (2) required her objection to the discontinuation of benefits to be upheld. We disagree.

The trial court properly held that the failure to hold an administrative hearing within the specified time period did not deprive the hearing officer of jurisdiction to hear the matter. We agree with the court that the plaintiff did not establish that the legislature intended to attach jurisdictional consequences to a delay in holding an administrative hearing. See *Williams* v. *Commission on Human Rights & Opportunities*, 257 Conn. 258, 269, 777 A.2d 645 (2001). We further agree that the legislature's use of the word "shall" is not a dispositive indicator of legislative intent to make a time limitation jurisdictional. See *Angelsea Productions, Inc.* v. *Commission on Human Rights & Opportunities*, 236 Conn. 681, 690, 674 A.2d 1300 (1996); *State* v. *Trahan*, 45 Conn. App. 722, 730–31, 697 A.2d 1153, cert. denied, 243 Conn. 924, 701 A.2d 660 (1997).

The plaintiff further argues that the administrative hearing officer's failure to issue her decision within the sixty day time period established by § 17b-61 (a) makes the decision a nullity. The trial court did not address this claim on its merits because, by failing to brief or to argue it, the plaintiff was deemed to have abandoned

it. As best we can tell, the plaintiff never filed a motion for articulation to supplement the court record.

On appeal, the plaintiff sidesteps the consequences of her own procedural default by ignoring its existence. Without any suggestion that the trial court committed plain error in finding this claim to have been abandoned, we decline to review it. See Practice Book § 60-5.

Finally, the plaintiff claims that the discontinuation of her son's state supplemental income benefits was improper because the department, having failed to provide form W-495A to her, did not give her proper notification of the impending discontinuation. Uniform Policy Manual §§ 3025.30A and P-3025.25 require the department to send such notification.

The trial court noted that the department's decision repeatedly had been communicated to the plaintiff during the course of the departmental proceedings, at a time when her son was still receiving supplemental income benefits. More importantly, the court observed that the plaintiff "cited no authority for her position, nor has she adequately briefed the matter, other than making the blanket claim of illegality." As a result, it concluded that this claim, too, had been abandoned.

On appeal, the plaintiff's principal brief is as barren as her trial brief was. In her reply brief, she asserts, for the first time, that the department's failure to send form W-495A was a violation not only of the department's regulations but also of her constitutional right to due process. It is an understatement to say that this argument comes too late. Even if we were to review its merits, the plaintiff's claim is frivolous. It assumes, counterfactually, that the benefits at issue were discontinued before the plaintiff received notice thereof and before the plaintiff had a fair opportunity to contest the propriety of the discontinuation.

We conclude, therefore, as did the trial court, that the procedural defaults of which the plaintiff complains do not invalidate the decision of the departmental hearing officer or the judgment of the trial court. In this posture of the case, we need not decide whether and when more significant procedural defaults might require the rendering of a judgment to reinstate benefits to which, as a matter of substantive law, a claimant is not entitled.

In sum, we agree entirely with the trial court's judgment in favor of the commissioner. In its thoughtful opinion, the court dealt properly with each of the issues that the plaintiff has presented on appeal.

The judgment is affirmed.

In this opinion the other judges concurred.